## NEWSOME *et al., vs.* COGBURN.

1. **J. N.** having two sets of children, made a division of his whole estate into as many shares as he had children, and gave off to each of the older set an equal share of the same.   Each of them receipted to him for the, sameas in full, of their distributive shares in his estate,   The balance left was the portion set apart for the youngest set of children. After his death, on a bill filed by the administrator for instruction: *Held,* that the disposition so made by the estate, and agreed to by the older children, was good, and excluded them from any interest in the estate of the deceased.

In Equity, in Putnam Superior Court.   Tried before Judge HARRIS, March Term, 1860.

This was a bill filed by John A. Cogburn, administrator of John Newsome, deceased, for direction as to the proper administration and distribution of the estate of his intestate.

The bill alleges that John Newsome departed this life in the year 1855, and that he left a will, made 28th January, 1854, and which, after his death, was admitted to probate, and complainant duly qualified as executor thereof ; that afterwards, said probate was set aside, and an intestacy declared by the Court of Ordinary, on the ground of the birth of a posthumous child, for which no provision was made in said will.   Complainant annexes a copy of said will to his bill and makes it a part thereof; that after the revocation of his letters testamentary, complainant was appointed the administrator of said John Newsome, and took possession of his estate, and now holds the same ready for distribution as the Court shall adjudge, order and decree.

The bill then states that said John Newsome was twice married, and had children by both marriages; that in the year 1851, he had an appraisement and valuation made of his estate by three of his neighbors, and made a division thereof amongst his children, by both marriages, giving off and paying to his children by the first marriage, and the descendants of such child or children by said first marriage as were dead, their full share of his estate, and retaining in his hands the remainder of his property for the children of the last marriage; and upon the delivery of said property to his children by the first marriage, and the descendants of a de-

ceased child, he took from them receipts, copies of which are set out below. The bill charges that the intestate intended said division and allotment to be final as to the children receiving the property, and they were to have no further share or interest in any estate which he should have or leave at his death, but the same should go to and vest exclusively in his wife and children by said second marriage, and that by the will heretofore referred to, said Newsome gave the whole of his estate from his second wife and her children—he taking a life-estate, and at her death, the whole to be divided amongst her said children.

The bill further states that the widow of deceased, who survived him, has since departed this life.

Defendant's children of the first marriage, by their answers, admitted the delivery to them of the property and money mentioned in said receipts, signed by them, but denied that it was intended to bar and preclude them from all further right or interest in the estate of their father, the said John Newsome, but the same were only advancements made to them by their father, and which they were willing to account for and bring into hotch-potch, and insisted upon their right to a distributive share of his estate.

Exhibit C, annexed to the bill and containing the receipts referred to.

"Received from John Newsome six negroes, (naming them,) and the same being all of the negro property of their equal and final distribution, and also received three hundred and seventy-seven dollars, of part of their portion, and there is five hundred and forty-five dollars that is yet to come when collected from Benjamin Ingram and Asa Zachary.

"January 9th, 1852.
    (Signed)                    "Moses J. Barrow."

"Received of John Newsome, in full of all demand for the part of his estate coming to his daughter, Angeline Barrow, it being an equal and final distribution of said estate.

"February 13th, 1854.
    (Signed)                    "M. J. Barrow."

"GEORGIA—Putmam County:

"Received of John Newsome, as trustee for Joel Newsome and his children, the following negro slaves, viz: Sam, a

fellow; James, a fellow; Mariah, a girl, and Jane, a girl, which is his proportionate part of his father's estate, put in by the undersigned in trust for his children.

"April 4th, 1855.

(Signed)　　　　　　　　　　　　" M. J. BARROW."

" Received of John Newsome a negro woman by the name of Keziah, the same being all of the negro property, after an equal and final distribution, coming to the six youngest chil- dren of his daughter, Mary Scott, the seventh and oldest child of said Mary Scott receiving her portion from said John Newsome. Also, four hundred and nine dollars and fifty cents in money, as part of the effects arising from the sale and final distribution of his land—the balance of the money coming to the six youngest children of his daughter, Mary Scott, amounting to four hundred and sixty-six dollars and eighty-one cents. I am to receive, when collected from Ben- jamin Ingram and Aza Zachary, the purchases of the land. All of said property and effects I receive as agent, in trust, for the six youngest children of said Mary Scott.

" December 30th, 1831.

(Signed)　　　　　　　　　　　　WM. J. SCOTT."

Then followed two other receipts by Scott, one for three hundred and twenty-one ,dollars, for his six youngest chil- dren, dated 7th April, 1853; and the other a receipt " in full of all demands for the part of his (Newsome's) estate coming to his daughter, Mary Scott, deceased, it being an equal and final distribution of said estate, I being agent in trust for Mary Scott, deceased," dated 1st January, 1854.

" Received of John Newsome two negro women by the names of Sukey and Poody, the same being all the negro property, after equal and special distribution, coming to my- self. Also, four hundred and nine dollars and fifty cents in money, as a portion of the effects arising from the sale and final distribution of the land of said John Newsome, the bal- ance of the money coming to me amounting to five hundred and forty-six dollars and twenty-nine cents. I am to receive, when collected from Benjamin Ingram and Asa Zachary, the purchases of said land.

" December 30th, 1851.

(Signed)　　　　　　　　　　　　" MILLY BIRD."

Newsome vs. Cogburn.

"Received of my father, John Newsome, two negroes, Bob and Likay, and one thousand dollars, in full of all my claim of my father's estate.

"August 9th 1852.
(Signed) "MILLY BIRD."

"Received of John Newsome one negro woman, by the name of Edy, and seventy-five dollars, it being my wife's · proportionable part of his estate, to his daughter, Mary Scott, deceased.

"January 1st, 1854.
(Signed) "JOSEPH W. WALTON."

"GEORGIA, PUTNAM COUNTY :
"Received of John Newsome, my father, five negroes, etc. Also, received all of my proportionable part of my father's (John Newsome's,) estate.
(Signed) "JOEL NEWSOME."

Then followed a receipt from James Scott of a certain negro, "the same being all the negro property, after an equal and final distribution, coming to myself;" then money arising from the sale of the land.

Then a receipt from Dartch Newsome for six negroes and money, "being an equal and final distribution ;" "all of said property I receive as a loan for my heirs, or heirs of my body, from said John Newsome, my father," dated 1st January, 1853.

The Court below held that the effect of the receipts above set forth was to bar defendants from all further or future interest in, or claim to, any estate which John Newsome might leave at his death, and that they were entitled to no part of the estate in the hands of the administrator, but that the same was alone distributable amongst the children by the second marriage.

To which decision counsel for defendant excepted.

*By the Court.*—LYON, J., delivering the opinion.

Did the distribution made by John Newsome, the intestate, in his life-time, to the children of his first marriage, and their acceptance of an equal share of his whole estate at that

time, on the terms expressed in their several receipts given for the same—that is, in full of all their claim or interest in his estate—exclude them from all further participation in this estate? We think it did. The intestate intended that the portions respectively given and received by his older children should be in full of all present and future claim on his estate, and that the balance left should go to his younger children. That was his intention. The children so understood, and accepted the property on that condition. It was a fair and legitimate contract between all parties. It is not pretended that the distribution was unequal, unfair, or fraudulent, or that if the property was all brought back and subjected to a new division that their respective shares would be increased. The practical and unnatural advantage that these parties propose to derive from defeating the intention of their father, is to keep the property they received, account for it in a division at its then value, and have an account of the property left in the hands of the intestate at his death, and which is the portion of the younger children under the contract, at its present increased value, so that the increase and increased value of that part of the property shall be the subject of general division, thus increasing their shares and diminishing that of the younger children. Such advantage would be unconscientious, unequitable, in violation of their contract, and cannot be allowed. We cannot see any good reason for disturbing this fair and just settlement. The release—if it be considered as a release, thought it is not strictly so, but a settlement or contract—was to the father for the benefit of the releaser and the younger children. It is not objectionable because between parent and child, as no advantage was taken. Nor is it so because the thing released or the subject of contract was a bare expectancy or probability. "Contingent interests and expectancies may not only be assigned in equity, but they may also be the subjects of a contract, such as a contract of sale, when made for a valuable consideration, which Courts of equity, after the event has happened, will enforce. So even the naked probability or expectancy of an heir, to his ancestor's estate, may become the subject of a contract of sale or settlement; and in such cases if made *bona fine* for a valuable consideration, it will be enforced in equity after the death of the ancestors, not, indeed, as a trust attaching to the estate, but as a right of contract.

*Story Eq.*, sec. 1040 (*l*); *Wright vs. Wright*, 1 *Ves. Sr.*, 409. The same principle is recognized by this Court in *Dugas vs. Lawrence*, 19 *Ga.*, 559.

Judgment affirmed.