F. M. STREET, *et al.*, plaintiff in error, *vs.* E. C. LYNCH, defendant in error.

1. Where A purchased lands from B and took bonds for titles, and went into possession and the evidence raised a presumption that he paid part of the purchase money and A, while in possession, sold to C, and received the purchase money in full, and gave C a bond for titles and delivered to him the grants from the State to the land and agreed to deliver the possession at a future day and A afterward sold the same land to D and A and D went to B and paid off the balance of the purchase money due from A to B, and B made a deed to D and the jury found that D had notice of the purchase by C when he bought of A: *Held*, that A, by his purchase from B, had an equity, which he could sell to C, and that D, having purchased with notice, and having obtained the legal title, held it as a trustee for C, upon the payment to him by C, of the balance of the purchase which he paid to B.

2. When the Court charged the jury that the case turned mainly upon *notice*, and the counsel did not ask the Court to charge upon the legal effect of rumors as notice: *Held*, that it is no sufficient reason for granting a new trial that the Court did not explain what amounted to notice, as applied to the facts in evidence, when no such request was made by the counsel, who now complain of the charge.

Bill for specific performance.    Tried before C. D. Mc-CUTCHEN, an attorney, selected by the parties.    Dade Superior Court.    November Term, 1868.

Lynch, by bill, averred that on the 17th of June, 1863, in Rutherford county, Tennessee, he bought of Buford Bur-

nett, of Dade county, Georgia, certain lands in Dade county, at $5,000 00, and then and there paid him for the same, *i. e.*, $3,500 00 in Confederate currency and $1,500 00 in stock; that Burnett exhibited to him a bond for titles to said land, and said that he had some of the purchase money to pay, and would pay it and get a deed and make Lynch a deed when Lynch came to Georgia in July, 1863; that because Burnett had no deed he (Lynch) took his bond for titles; that he was to get possession of part of the premises in July, 1863, and of the balance on the 1st of January, 1864. (This bond purported to have been made in Dade county, Georgia, and recited that on said day Burnett had sold Lynch said land "for the sum of $5,000 00 in cash," and specified nothing which Lynch was to do; but its condition was: "Now, by said E. C. Lynch complying, on his part, the said Buford Burnett is to make, or cause to be made, a good and lawful title to said lands to said E. C. Lynch or his assigns.") Further, he averred that he lived in the lines of the Federal army and the land was in the lines of the Confederate army, and so he could not go to it in July, 1863, and did not do so till after the war; that when he did go, he found said Street in possession, and he refused to vacate the premises, alleging that he was the owner of the land; that Street had bought said lands from Burnett in August, 1863, with notice of Lynch's purchase and colluding with Burnett and Alexander B. Hanna and Virginia E. S. Hanna, heirs-at-law of John G. Hanna, whose bond Burnett held, took said title and possession to defraud him, he (Street) never having paid all the purchase money to Burnett; that Burnett's residence was not known, that he resided out of Georgia and had no property therein.

He prayed that Street should be compelled to pay him reasonable rent for said premises, and convey them to him. Discovery, except from the Hannas, was waived. They denied all combination; answering that, as heirs of John G. Hanna, they had accepted from Burnett the *balance of the purchase-money*, and made the deed without notice of the sale to Lynch. Street answered, insisting on proof of the former

sale, and saying that his purchase was *bona fide*, and without notice of Lynch's pretended purchase. When the cause came on for trial, the Judge having been of counsel, by consent, Col. C. D. McCutchen was made Judge *pro hac vice.*

On the trial, Lynch testified to said averrments in his bill, and further explained them as follows: the stock paid Burnett was a mare at $250 00, a stallion at $1,000 00, and a jack at $250 00, all of which was delivered to Burnett in Tennessee, at the time of the sale; that Burnett then procured one Hoover to keep the jack till Lynch went to Georgia; that Lynch would then carry the jack to Burnett, but this was no part of the trade, this was a private arrangement for which Burnett was to pay Lynch; the bond was drawn by a young man not an adept at such matters; but nothing remained for Lynch to do, he was simply to go to Georgia and get possession of the land and a deed, which deed Burnett said he could and would get at once. He exhibited two plats and grants for said land, which he said Burnett left with him, and upon the faith of them and Burnett's representations, he made the purchase. He said he never brought the jack to Georgia, that the jack got away from Hoover, and was lost. He also testified to the facts stated by the witness, Swader, hereinafter stated.

A. B. HANNA testified: That the lands were worth from $60 to $70 *per annum*, for rent, and that Street had had possession of them since the latter part of 1863; that on the 24th of August, 1863, Burnett paid him the note for the balance of purchase-money, which had been transferred to him, $500 00 and interest in Confederate currency; that Street furnished the money, and was there present, and took the deed, and Street also paid off a judgment held by Stewart, transferee of John G. Hanna, for about $640 00, which was a lien for another part of the purchase-money for said lands; that Street also paid witness $200 00 or $300 00, which Burnett owed him on other accounts, and paid Burnett some other money. All these payments were in Confederate currency, of which it then took $15 00 to buy $1 00 of gold.

HOOVER testified, as had Lynch, as to his contract to keep the jack, and the loss of him. The signature of the witness to the bond was proved, and the bond was read in evidence.

THOMAS SWADER testified: He and Lynch and Lynch's son were traveling together (when is not stated,) and met Street, and Street and Lynch conversed about the Burnett place, and Street told Lynch that he knew he had bought the place from Burnett, and knew the horses which Lynch paid to Burnett; that Street said something about having consulted an attorney before he bought the land, and Lynch might sue him; that Street said he saw a letter from Lynch to Burnett, in which Lynch said he could not comply with his contract, and though he had heard of said purchase, he bought because of said letter.

MRS. BURNETT testified: That she thought her husband was dead; that while he and Street were speaking of making said trade, she told Street that Lynch had bought and paid for the land; that they went off and seemed disposed to conceal their dealings from her; that her husband had a letter, which he said Lynch wrote, stating that he could not comply with his contract, but she knew that it was in the handwriting of Burnett.

LEONIDAS EVANS testified, that he saw Lynch pay said money and deliver said horses to Burnett in payment for said land, just as Lynch testified, except that Evans said the Jack was not delivered but Burnett was to have him whenever he went to Lynch's house for him; that he and one Maupin took said horses to Mrs. Burnett, at Burnett's request, and told Mrs. Burnett, Hugh McKing, Mr. Street and perhaps others of the trade; that soon after, before the 21st of August, 1863, Street and his father came to witness at Robeson's shop, took him out and asked him about said sale to Lynch; witness told him all about Lynch's paying for the land as aforesaid. Street then told witness that he had bought the land from Burnett, and partly paid for it, and would kill Burnett if he did not refund his money, and then, after reflection said he would go to A. B. Hanna, pay the balance of the purchase money and get a deed and then he

could hold the land. Street's father said John G. Hanna had no administrator, and he feared that would not do, to which Street replied, that he would risk it. He said he told Hanna of the sale, and that it was generally understood and the common talk that Burnett had sold out. He said that, in the same conversation, Street said he had told Ashburn of his purchase from Burnett, that Ashburn laughed at him and said Burnett had sold out before, and referred him to Maupin, that he went to Maupin and he referred him to witness.

MAUPIN testified, that Burnett told him he had sold his land, to Lynch; showed him the money and stock; that Street's enquiry of him was after Street's purchase, and that Street said he had not paid Burnett in full, and would not till further enquiry; that Street spoke of said letter from Lynch to Burnett, and said that an attorney, whom he consulted, told him he was safe in making the trade if the letter was genuine. Here the testimony for complainant was closed.

The testimony for defendants was substantially this: McGlohn said, Street consulted said attorney, S. T. Baily, after his purchase from Burnett, to know whether it was safe to pay Burnett the balance of the purchase money, and the attorney said it would be, if said letter was genuine.

BAILY testified, that he did not recollect ever being consulted by Street.

STREET testified to the payments by him to Burnett before mentioned by Hanna, and that he paid Burnett all the balance of $5,000 00, which was the price except $1,700 00 in Confederate currency, which, at a fair valuation, he is ready to pay; that he took the deed in good faith, without notice of any former sale, and after that, on the same day, told Ashburn of said trade, and then first heard of the prior sale; that he then saw Maupin, and then Evans, as they testified. His deed was read in evidence; he said the rent of the premises was not worth more than his repairs.

STEWART testified to said payment made to him by Street for Burnett.

Six witnesses testified that Evans' character was bad, and

that they would not give full credence to him, that his testimony ought not to be believed, especially in case he were interested. Street's solicitors, while arguing the case, requested the Judge to charge the jury, that, if Burnett had the bond for titles, and had not paid the purchase money Street might lawfully buy the land and pay the purchase money to the obligor or his assigns, and take a deed, and that even if Street had heard rumors of a former sale by Burnett, yet if Burnett had the bond the finding should be for Street; that if Burnett had sold to Lynch before Burnett paid the purchase-money Lynch got neither a legal title nor a perfect equity. The Judge refused so to charge, but charged that if Street had notice of Lynch's purchase at the time of his purchase, the finding should be for Lynch, otherwise for Street, and that if they found for Lynch, they could find such rents as the testimony showed was right. The finding was for Lynch, without rent, and the decree was, that Street should make him a deed to the lands, and that *haberi facias possessionem* issue in favor of Lynch.

The Court immediately afterwards adjourned and the parties and solicitors left. For this reason no motion for a new trial was made.

The solicitors for Street say that said refusal to charge and the charge as given, were erroneous, and that the jury found contrary to law and evidence.

TATUM & DABNEY, for plaintiffs in error.

GRAHAM & WALKER, for defendant in error.

BROWN, C. J.

1. The evidence in this case shows that Burnett had purchased the land in dispute from John G. Hanna and taken bond for titles and had paid him part of the purchase-money. The answers of A. B. Hanna and Mrs. Hanna (the father and widow of John G. Hanna) say that Burnett, when they made the deed to Street, paid the *balance* of the purchase-money, which shows that part of it had already been paid.

We think Burnett, by the purchase, taking bond for titles and the payment of part of the purchase-money, acquired an equity in the land, which he had a right to sell, and which was the proper subject of purchase by Lynch.

The evidence shows that Lynch, in good faith, bought the land of Burnett, and paid the entire purchase-money, and took bond for titles, and that Burnett deposited with him the grants from the State of Georgia, and promised to return home and pay the balance of the purchase-money to Hanna, and then make Lynch a deed. If Burnett had kept his promise and had paid the balance of the purchase-money to Hanna, Lynch would have had a perfect equity, if not a legal title to the land, the moment Hanna received the balance due for the land. But instead of keeping his promise, Burnett went home and sold the land to Street, before he paid the balance of the purchase-money to Hanna, and he and Street went to the widow and father of Hanna, and Burnett paid the balance due on the estate, and the judgment on the note that had been transferred, with part of the money which Street was to pay him for the bond, and at his request the Hannas made the deed, not to him for Lynch's benefit, but to Street, the subsequent purchaser. Now the whole case would seem to turn upon notice. If Street, at the time he made the purchase, had notice of the sale to Lynch, he took subject to the rights of Lynch, and held the land as a trustee for Lynch, and the most he could claim was, that Lynch pay him the amount of balance of purchase-money paid by him to Hanna, when he was bound to make Lynch a deed and deliver the possession to him. See Code, 3036; Story Eq. Jurisprudence, secs. 395–400.

Does the verdict in Lynch's favor, compensate Street, his trustee, for the money he paid to Hanna to perfect the title which the finding requires Street to make to him? We think the evidence is sufficient to sustain the verdict on that ground. The balance due for purchase money was $1,141 00. This Street paid in Confederate Treasury notes, worth, when paid, fifteen for one in gold. The amount in gold which Street paid 24th of August, 1863, was, therefore, only $76 00.

VOL. XXXVIII—41.

Add five years and three months' interest, $27 93, and we have $103 93. To this add one-third for the difference between gold and Federal currency, $34 64, and the total amount is, $138 67 in currency. The evidence shows that Street took possession of the land in the latter part of 1863. Hanna swears the place was worth, for rent, $60 00 to $70 00 per annum. Now if no charge is made till the end of the war, Street is still chargeable for the rent for 1865–6–7 and 8, four years, which would amount to more than the value of the Confederate money paid by him with interest and premium added.

2. The Judge charged the jury, that if Street had notice of Lynch's purchase at the time of his purchase, the finding should be for Lynch; otherwise it should be for Street. We see no error in this charge; and as the evidence as to the time when Street received the notice is in conflict, and the jury found for Lynch, we see no reason why we should disturb the verdict.

But it is insisted that the Court should have charged as to the effect of rumors as notice. We are not prepared to say that there is lack of sufficient positive evidence of notice. But whether that be true or not, when the Court gave the above charge, if the counsel for Street were not satisfied with it, they should have asked the Court, in writing, to charge specifically on the effect of rumors as notice, and having failed to do so, they are presumed to have acquiesced in the charge as given. 10 *Ga.*, 262; 13 *Ga.*, 34; 20 *Ga.*, 528; 26 *Ga.*, 374; 28 *Ga.*, 216; 37 *Ga.*, 102.

After looking carefully into the whole case, we think substantial justice has been done, and that the law has been faithfully administered.

Judgment affirmed.