EVANS, trustee, *v.* SAWILOWSKY, executrix, *et al.*

No. 9927. SEPTEMBER 21, 1934.

*Clement E. Dunbar,* for plaintiff. *Curry & Curry,* for defendants.

BECK, P. J. On November 2, 1932, John J. Evans Jr., as trustee in bankruptcy of Sarah Gillman, brought suit in equity

against Rosa Sawilowsky, as executrix of Jake Sawilowsky and individually, and against Sarah Gillman, bankrupt, for an accounting in order to recover for creditors the value of an alleged one-tenth interest of Sarah Gillman in the estate of her father, Jake Sawilowsky. The trustee averred that Sarah Gillman was adjudged a bankrupt on June 27, 1932; that he was appointed her trustee in bankruptcy on July 8, 1932, and had become vested with the title to the one-tenth interest of Sarah Gillman in the real estate of her father, as devised to her by his will, to which legacy the executrix, Rosa Sawilowsky, had assented on or about February 10, 1928; that title passed to Sarah Gillman and to him as such trustee, and he was entitled, under the Federal law, to avoid any transfer of such property which any creditor of Sarah Gillman could have avoided; that on October 4, 1932, she, by a joint deed with her brothers and sisters, had transferred to her mother her one-tenth remainder interest in the real estate of her father, after title to such remainder interest had passed to petitioner as trustee in bankruptcy, and that such transfer was a cloud on his title and was void as against him. No fraud was charged against any one. The trustee prayed for accounting against Rosa Sawilowsky as executrix, for the interest of said Sarah Gillman in the property mentioned, as of June 27, 1932; and for injunction, cancellation, etc. To this petition defendants filed a demurrer, which was overruled. The case was referred to an auditor.

The defendants answered the petition, and denied that Sarah Gillman had, on June 27, 1932, when she was adjudged a bankrupt, any interest that could pass to her trustee in bankruptcy. They averred that the debts of her father exceeded the value of his property by $17,000; that there was no residue of his estate, after the payment of his debts, to pass under his will; and that the plaintiff has not become vested with any remainder interest of Sarah Gillman, as she had no interest, but that the mother was the owner of the realty specified, under an agreement with her children that she should have the same if she paid off the debts of their father, Jake Sawilowsky; and this she had done. To this answer the plaintiff filed general and special demurrers. The defendants filed amendments, in which it was alleged that the agreement between the children of Jake Sawilowsky and their mother, Rosa Sawilowsky, whereby the children sold and agreed to convey to her their inter-

est in the real estate of the testator if she would protect the family name and sustain the credit and character of their dead father by paying his debts was verbal, and was made shortly after his death in December, 1927, and prior to January 3, 1928; that the mother, in 1928, paid all debts of her deceased husband, the father of defendants; and at the request of her children she paid stated sums to her daughter, Sarah Gillman, in 1927 and 1929, and stated sums to other children, and to her attorney at law, making total payments out of her personal funds of more than $17,000, and acquired title to the realty mentioned in the agreement, and this was confirmed by deed from the children to herself on October 4, 1932; but that if this deed does not confirm the agreement and give to the mother title to the entire property in question, then she was a creditor of the estate and entitled to be repaid her disbursements before any child was entitled to any benefit under the will. To the answer were attached a copy of the will and of the deed from the children to their mother in compliance with the alleged contract.

The plaintiff demurred to the answer as amended, as setting up no defense, and on numerous special grounds, which were overruled. The plaintiff introduced in evidence the will of Jake Sawilowsky, devising the "residue" of his estate, after payment of debts and legacies, to his wife for life, with remainder to his ten children, of whom Sarah Gillman was one, and the assent of the executrix to the legacies. The plaintiff claimed that as a result the title to the "residue" passed to Rosa Sawilowsky for life, with remainder in fee to ten children, Sarah Gillman's part being one tenth. The plaintiff put in evidence the inventory showing that the realty mentioned in the petition had been appraised at $15,500; also evidence of the existence of sundry creditors of Sarah Gillman, including a judgment for $1200 obtained by Mrs. Bush, being a deficiency judgment for a loan of $3,000 obtained by Sarah Gillman from Mrs. Bush on sundry real estate; and evidence of the real-estate agents who negotiated the loan, that it was mentioned to them when so negotiating that "Mrs. Gillman was an heir to an estate that we understood consisted of quite a sum of money, the Sawilowsky estate. Mr. Sawilowsky was her father. Mr. Gillman was a man of good credit," etc. No assignment of Mrs. Gillman's interest in the Sawilowsky estate was asked, the loan being made strictly on certain specified property of Mrs. Gillman. Mr. Bush, agent of Mrs.

Bush, said that it was represented to him that at Mrs. Sawilowsky's death Mrs. Gillman would inherit substantial property.

■ The court properly overruled the general demurrer to the petition; and the special demurrers, so far as meritorious, were sufficiently met by amendments.

■ The auditor made a general finding that under the evidence the life-estate of Rosa Sawilowsky did not come to an end for any cause; that there was no evidence of her age or expectancy of life, or of any possession by Sarah Gillman of any property, or of any illegal transfer by Sarah Gillman of any property interest that put a cloud upon the title of plaintiff as claimed; that no fraud was proved, nor was there any evidence of any "residue" of the estate of Jake Sawilowsky remaining after the payment of debts and legacies. The auditor secondly ruled that the plaintiff did not prove his case as laid; that he did not show any illegal action by either defendant, or any illegal transfer by Sarah Gillman that could be set aside under the bankruptcy act, or that was a cloud upon his title, but claimed that the executrix must account to him for all her acts as executrix and individually, "so that there will show as of the date of bankruptcy adjudication of Mrs. Sarah Gillman, June 22, 1932, the title, right, and interest of said latter defendant as remainderman, and consequently of plaintiff, in the realty described." No exception was expressly taken to this second ruling; and the defendants insist that that finding made a disposition of the case adversely to the plaintiff. In this contention we do not concur. This was merely a broad, general ruling, which in a certain sense sums up the finding of the auditor, which was followed up by more specific rulings to which exceptions were duly taken, and these should be passed on.

■ The principal question relating to the controlling issue in the case is, whether or not the children of Jake Sawilowsky and his wife, Rosa Sawilowsky, made, at the time they insisted it was made, the agreement with their mother that she should have the entire interest in the estate of their deceased father if she would pay the debts of the estate. On that issue the defendants introduced a deed executed on October 4, 1932, in which the children conveyed to their mother all their right, title, interest, and equity in the property (describing it) belonging to the estate of their deceased father. They also introduced evidence to show that several years prior to

the adjudication in bankruptcy of Mrs. Gillman there was a parol agreement between the mother and the children, that if the mother would pay the debts of the estate, the title to the entire property should be vested in her. Mrs. Mollie Shmerling testified that she was the daughter of Jake and Rosa Sawilowsky; that Jake Sawilowsky died on December 21, 1927, and left a wife and ten children and a shoe business; that the estate was heavily indebted, the debts being more than the estate was worth, and the children asked their mother to pay these debts with her own money; that she had insurance money and her own money, as she had been in business for herself, and the witness knew if her mother paid these debts it would take practically all she had to pay them. "We said we would give her our interest in the property if she would pay these debts. She agreed to do so, and did so. The paper presented is what we signed; it is a quitclaim deed to her for the property, dated October 4, 1932." On cross-examination this witness testified: "I say this was the bargain between my mother and all of us heirs. Shortly after my father's death, as soon as we were able to get a good look at his estate and get in all of his indebtedness, then we found that the assets of his estate would not pay his debts. Then all of the heirs met with my mother, and we agreed, 'Now, Mother, you pay the debts out of your money, and the land is yours absolutely. All of the assets of Father's estate are yours. You are to pay the debts.' That was the agreement. Then, of course, I considered all these lands hers from then on. The reason we didn't make any deed was, we didn't think it would ever come up; we didn't think it would be necessary. If my sister, Mrs. Gillman, had not gotten in financial difficulties, I doubt seriously if there would ever have been any deed. My mother absolutely fulfilled the contract that we heirs made with her that she would pay the debts. I don't think there is a bill outstanding against the estate that hasn't been paid. I and my sister helped mother pay the bills by making out the checks. We have the total amount that was paid. I couldn't remember the amount of each one. I helped Mother, and also my sister Eunice helped her. She is not married. She is the fourth from the youngest sister. I am next to the oldest of the children. Mrs. Gillman is the oldest. I have read Mr. Curry's amendment to the answer, filed March 30th, in which is the following: 'That the agreement between the heirs of Jake Sawilow-

sky and Mrs. Rosa Sawilowsky, referred to in paragraph thirteen of the original answer of these defendants, was verbal and entered into shortly after December 21, 1927, and prior to January 3, 1928, and provided that the heirs would assign and convey their interest in and to the estate of Jake Sawilowsky to Mrs. Rosa Sawilowsky if the said Mrs. Rosa Sawilowsky would protect the family name and sustain the character and credit of their dead father, by paying his honest and legitimate debts.' That is correct."

It also appeared from the bank book, canceled checks, etc., of Rosa Sawilowsky, and from letters from the insurance company, and deposits in the bank, that Rosa Sawilowsky had her own individual property and funds of her own, including some $12,000. insurance money paid to her individually after the death of her husband, and was personally financially able to pay from her own property the debts of Jake Sawilowsky, as she had agreed with her children to do under the family agreement made about January 3, 1928, and that she did so. The evidence showed that the contract claimed to have been made between the mother and children as to the payment of the debts of the estate has been made and carried out. This evidence sustains the deed made October 4, 1932, by the children to their mother, by which they formally conveyed to her the real estate in question in pursuance of their verbal contract with her. She was in possession of the whole property, and the deed conveyed to her the undivided interest of Jake Sawilowsky in the several pieces of property, the other undivided interest being already her individual property.

Under the evidence the auditor was authorized to find as a fact that the payments made by Mrs. Rosa Sawilowsky, under the verbal contract between herself and her children, and with her money, were not voluntary payments, but were for the consideration named in the contract and specified in the deed of October 4, 1932. The plaintiff did not charge fraud, and did not offer evidence tending to dispute the truth of the contract between the mother and children, set forth in the deed of October 4, 1932, and supplemented by evidence corroborating the testimony of Mrs. Shmerling. The auditor also found that Sarah Gillman was a party to the contract and was bound thereby. The contract was consummated in the year 1928, and became conclusive upon Mrs. Gillman before she went into bankruptcy in June, 1932. The auditor further found: "The

evidence of defendant also shows that after this contract between mother and children was made, on or about January 3, 1928, and after the executrix had assented to the legacies under the will on February 7, 1928, and after she had paid the debts of the father, the testator, in 1928, and had fully performed the contract, and was the owner of all that was left—had practically wound up the estate in 1928,—that Anton Gillman, her son-in-law, and husband of Sarah Gillman, became bankrupt, and that Sarah Gillman bought out the business of this bankrupt husband in July, 1928, and partly with money furnished her by her mother, and that this business of Sarah Gillman subsequently became bankrupt on June 27, 1932, and plaintiff became her trustee in bankruptcy. This bankruptcy has brought about this suit, and Rosa Sawilowsky claims that she is the owner of all of the property in question, as sold to her by her children in consideration of her paying the debts of the estate; that if the sale is not valid, then she is a creditor of the estate. Rosa Sawilowsky also claims that she made advances, from time to time, to Sarah Gillman; that such are chargeable against the estate; while plaintiff trustee, on the contrary, claims that such were not advances, but gifts from the mother personally to Sarah Gillman. If the estate had been practically wound up by Rosa Sawilowsky in 1928, there was no estate in 1929 from which advances could be made; but if it was not wound up, and plaintiff so contends, then advances could be made therefrom. In this uncertainty the family memorandum of such advances was made August 16, 1932. The dates and amounts of these advances are stated, and also that such were advances from the estate of Jake Sawilowsky, and were so received by Sarah Gillman. She says so herself, and as in full of her share of said estate. This declaration is signed by all the children of Jake Sawilowsky. While on the stand Mrs. Shmerling, in her testimony, went into some detail as to the condition of Sarah Gillman and her family after the bankruptcy of Mr. Gillman. She tells of their needs, and of the impoverished condition of Sarah and her five children, as that they were without food, etc.; that the loans on the property of the Gillmans were taking everything that they had, and that they had to have some money to live on; so' witness asked her mother to make advances to Sarah, and that the mother did so, and with the knowledge and consent of all the Sawilowsky children. 'She made these advances to our sister because she was

in trouble and needed it. Mother just gave it to her; that's all.' . . From this part of the testimony of Mrs. Shmerling plaintiff claims that the advances to Sarah Gillman of $2145 were not from the estate of Jake Sawilowsky, but were pure gifts from the mother to the daughter. In another portion of her testimony Mrs. Shmerling testified that these advances were for the purposes stated in the family agreement. . . That all were not for living expenses is self-evident; some were to meet claims against the property of Mrs. Gillman. Mrs. Gillman did not need $2145 for food, etc. Thus, on Dec. 18, 1928, $639 was advanced to Mrs. Gillman to reduce a mortgage on 544 Broad St., the property of Mr. and Mrs. Gillman. On May 26, 1929, $300 was advanced to save the property she was losing. On May 22, 1929, $200 was advanced Mrs. Gillman to buy back fixtures and shelving in her store. On May —, 1929, $600 was advanced to pay note indorsed by Mrs. Gillman at the National Exchange Bank; and on July 10, 1929, $407.61 was advanced to pay living expenses and merchandise bought for such store;—a total of $2143.61. From these items it is apparent that only the last advance included living expenses. There may have been others, and probably were, but such are not notes in said family adjustment. As some of the testimony of Mrs. Shmerling indicates that Mrs. Gillman had to have money to meet her living expenses, and that their mother 'just gave it to her,' the auditor sustains the position of the plaintiff to the effect that all advances for living expenses were gifts from mother to daughter. The only item in which such appears is that of July 10, 1929, for $407.61. This item says, for 'living expenses and merchandise for the store,' but it does not state how much was for living expenses and how much for merchandise. The auditor therefore divides this sum of $407.61, strikes half, or $203.80, as gifts, for living expenses, leaving the claimed advances to Sarah Gillman from the estate at $1941.81." These findings of the auditor were authorized under the evidence. And so were other findings sustaining the contentions of the defendants.

■ The finding of fact just referred to justified the holding of the auditor in regard to the validity of the agreement and of the deed referred to. These findings of fact which were authorized by the evidence necessarily resulted in the holding, under the law, that title to the entire estate, after performance by Mrs. Sawilowsky in

accordance with the agreement, vested in her. The plaintiff insists that the evidence was not sufficient to authorize this finding; that the evidence of the defendants showed that there were other witnesses as to the agreement, whom the defendants did not introduce, and that their failure to introduce witnesses who were cognizant of the facts testified to by only one witness so weakened and detracted from the evidence that was introduced that it was not sufficient to establish the alleged parol contract with that certainty required by law. In this contention we can not concur. While only one witness was introduced, there were many circumstances confirming the testimony of that witness. In view of the ruling as to the finding upon the question of whether the parol contract was established or not, the deed which was introduced was not void or ineffectual, if executed in good faith, merely because it was executed and delivered after Mrs. Gillman was adjudicated a bankrupt. It was carrying into effect and giving final form to an agreement that was made in time, and which had already been executed. It was a part of the evidence in the case, and could be considered as such. Whether it would have sufficed to convey the title to Mrs. Sawilowsky independently of the valid parol contract is a question which we do not pass upon. In *Home Mixture Guano Co.* v. *McKoone,* 168 *Ga.* 317 (147 S. E. 711), it was ruled: "Where a father under a parol agreement between him and his son gives to the latter a tract of land as an advancement in full of his prospective share in his estate at and after his death, and where the son under such agreement accepts and takes possession of such land in full of his prospective share as heir at law in the estate of his father, such agreement, after full performance, is a valid and binding contract, and after the death of the father intestate, leaving other heirs, the son will be barred and estopped from claiming or taking any part of the father's estate as an heir at law of the father. In these circumstances all property left by the father would pass to his other heirs at law, to the exclusion of such son; and a creditor who obtains a judgment against the son, after the making of such contract and its full performance by the father, can not subject any part of the property left by the intestate father, upon the ground that the son was entitled to it as his share in the estate of his father. *Newsome* v. *Cogburn,* 30 *Ga.* 291; *Barham* v. *McKneely,* 89 *Ga.* 812 (15 S. E. 761); *Pylant* v. *Burns,* 153 *Ga.* 529, 530 (112 S. E.

455, 28 A. L. R. 423). . . Full performance of this contract by the father accepted by the son in accordance with the agreement, renders the agreement valid under the statute of frauds. Civil Code, § 3223. . . Such agreement was not rendered ineffective by the fact that the father, at the time he gave the land to his son and put him in possession, did not execute to him a conveyance to the land, where the father soon thereafter, at the instance of the son, conveyed the land to one to whom the son sold it, and where the son received the full amount of the purchase-money." The Code § 4634, provides: "Full payment alone, accepted by the vendor, or partial payment accompanied with possession, or possession alone with valuable improvements, if clearly proved in each case to be done with reference to the parol contract, will be sufficient part performance to justify a decree." And in *May* v. *Sorrell,* 153 *Ga.* 47, 53 (111 S. E. 810), the same general principle was laid down: "Payment in full of the purchase-money would give him such title as would enable him to defend in this case against the attack made upon him by the plaintiff. Payment in full of the purchase-money, in this State, gives to the purchaser a perfect equity, which is a good title even at law, and is sufficient to support or defeat an action of ejectment. *Pitts* v. *McWhorter,* 3 *Ga.* 5 (46 Am. D. 405) ; *Peterson* v. *Orr,* 12 *Ga.* 464 (58 Am. D. 484) ; *Dudley* v. *Bradshaw,* 29 *Ga.* 17, 25; *Temples* v. *Temples,* 70 *Ga.* 480, 483; *Glover* v. *Slamps,* 73 *Ga.* 209 (54 Am. R. 870) ; *Howell* v. *Ellsberry,* 79 *Ga.* 475 (5 S. E. 96) ; *Dodge* v. *Spiers,* 85 *Ga.* 585 (11 S. E. 610)."

■ Under the pleadings and the evidence, the defendant was not put to election as to whether she would rely on an equitable or legal title, or that the estate of Jake Sawilowsky owed her for money paid, and the entire estate (except certain legacies) should be held to be hers. No question of the election of defenses was involved.

*Judgment affirmed. All the Justices concur.*