20173, 20174. DOLLAR *v.* DOLLAR; and *vice versa.*

HAWKINS, Justice. On November 20, 1956, Joe Brown Dollar filed in Grady Superior Court his application for partition of certain lands in said county as therein described. The petition recited that the plaintiff and defendant, L. W. Dollar, "are the common owners in fee simple" of said lands; that the interest of the plaintiff and the defendant respectively in said lands "is as follows: Joe Brown Dollar a six-sevenths interest; L. W. Dollar a one-seventh interest." The application further recited that the parties are sui juris; that the defendant is a nonresident of the State of Georgia, residing at a stated address in Detroit, Michigan; that the plaintiff was desirous of having said lands partitioned as between himself and the defendant; that the plaintiff was bringing into court his title deeds and title; and the prayers of the petition were that his title deeds and title be examined and established by the court, and for the appointment of commissioners for the partition. Service was perfected on the nonresident defendant, and on January 18, 1957, within the time provided

by law, he filed his answer, which as amended admitted that the plaintiff and defendant are the common owners of the described land, but denied that the interest of each was as alleged in the petition. The answer as amended alleges that the defendant owns a three-sevenths undivided interest in the lands in question, and that the interest of the plaintiff is not more than four-sevenths. In his answer, the defendant objected "to the partioning of said property until such time as the exact interest of the tenants in common therein is determined," alleging that "said property formerly belonged to his father, W. A. Dollar, and that it passed under the will of W. A. Dollar to the following persons: Nancy Dollar Faircloth, James Eddie Dollar, Willie Blackman Dollar, Henry Grady Dollar, Leslie Dollar, Earl Dollar, and Hoke Smith Dollar." The answer further alleged that the defendant acquired a one-seventh undivided interest in said property under the will, and that he has purchased the interests of Nancy Dollar Faircloth and Willie Blackman Dollar, copies of the deeds being attached and made a part of the answer. The prayers of the answer as amended were "that the court fix and establish by decree the exact interests of the parties hereto in said land, all as provided by law, and that he [the defendant] have such other relief as to the court may seem just and proper."

On the issues as raised by the pleadings, the case came on for trial before a jury on September 5, 1957. The plaintiff offered, and there was admitted in evidence, a quitclaim deed dated November, 1952, from James E. Dollar, H. G. Dollar, Earl D. Dollar, and H. S. Dollar, four of the seven children to whom the property passed under the will of their father, to the plaintiff, Joe Brown Dollar. There is no dispute with respect to the fact that the defendant, L. W. Dollar, by virtue of the will, owned a one-seventh interest in the property. Therefore, this litigation involves the remaining two-sevenths, devised to Nancy Dollar Faircloth and Willie Blackman Dollar. The plaintiff contends that, by virtue of parol contracts of sale and purchase and the payment of $1,300 each to his sister Nancy and his brother Willie, he acquired the one-seventh interest of each in the property in question; whereas the defendant contends that he acquired these two-sevenths of the property by virtue of quitclaim deeds dated August 3, 1955, and March, 1956, respectively, from Nancy Dollar Fair-

cloth and Willie B. Dollar. The plaintiff offered, and there was admitted in evidence, a check signed by Joe B. Dollar, as maker, made payable to W. B. Dollar, dated August 21, 1952, drawn on Cairo Banking Company, in the amount of $1,300, containing a recital thereon that it was for "Share in full of Willie Blackman Dollar's interest in north half of Lot No. 295 and interest in Lots 294 and 306," containing the endorsement on the back thereof of the said payee, and with the bank's stamp thereon showing that it was paid on presentation. The trial judge instructed the jury that they were not concerned with the partitioning of the land, and thus confined the issue to a determination of the interest of each party in the land. The jury returned a verdict partly in favor of the plaintiff and partly in favor of the defendant, in the following form: "We the jury give Joe Brown Dollar the one-seventh portion claimed by Willie B. Dollar and we give the one-seventh portion claimed by Nancy Faircloth to Leslie W. Dollar." Judgment was entered accordingly, which recites that the plaintiff, Joe Brown Dollar, is adjudged to have five-sevenths, and the defendant, L. W. Dollar, two-sevenths interest in the property in question.

A motion for new trial was filed by the plaintiff on the general grounds, and subsequently amended by adding six special grounds. The first special ground charged that the verdict of the jury in so far as it found in favor of the defendant as to the one-seventh interest formerly owned by Nancy Jane Faircloth in the lands described in the petition or application for partition is contrary to evidence and without evidence to support it; and the remaining five special grounds complain in one form or another of the failure of the court to charge the principle of law contained in Code § 37-116, to the effect that "Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, shall be equivalent to knowledge, in fixing the rights of parties." On May 31, 1958, the motion for a new trial as amended was denied on each and every ground thereof, and the plaintiff excepts to that judgment.

By cross-bill of exceptions the defendant complains of the ruling of the trial court in admitting evidence relative to the acquisition of title by the plaintiff by parol contract and payment of the purchase price when the pleadings contained no refer-

ence or statement as to the acquisition of title in this manner. *Held:*

1. The plaintiff, Joe Brown Dollar, testified that he paid his sister, Nancy Dollar Faircloth, $1,300 in cash, in March, 1952, for her one-seventh interest in the lands in question; that he did not have a deed prepared for her to sign at the time; that he told his sister he would have one made out and he wanted her to sign it, and that she answered, "Well, all right, I'll sign it"; that he had been unsuccessful in getting his sister to sign the deed which he had prepared; and that he testified substantially to this same effect in the Court of Ordinary in 1955, in the will case. The defendant, L. W. Dollar, testified that he paid his sister, Nancy Dollar Faircloth, $800 in cash, on August 3, 1955, for this same one-seventh interest in the land, the quitclaim deed which she executed on that date being tendered and admitted in evidence; that this deed was prepared after the hearing in the ordinary's court, and after his lawyer and he had checked the title records; that he was present at the Court of Ordinary of Grady County when this will case was tried; that he heard Joe Brown Dollar testify in that case; that, "As to whether he testified in the trial of the will case about negotiating with his sister and her coming to his house and for an agreed sum he bought out her interest in that land, I don't remember that; no, not those exact words, I do not. . . I do not remember at all hearing him testify at that time, in connection with the payment of the agreed price for her interest, that he paid her the same as he did his brother Willie. I don't remember that question was raised by Mr. Carlisle as to whether he treated her right or not; I don't remember that. . . In answer to the question as to whether I mean to say that Joe Brown Dollar didn't testify in the ordinary's court about paying his sister some money, I don't remember that part of it. I don't know what deal nor nothing he made with her at any time. As to whether he testified about that, I don't remember that part of it at all. . . I did not have any other actual notice that my brother had bought this land from either my sister or my brother Willie at the time I purchased it." While it is a well-established rule of law that "The testimony of a party in his own behalf when contradictory will be construed most strongly against him, and he is not entitled to a finding in his favor if that version of the testimony most unfavorable to

him shows that the verdict should be against him" (*Partain* v. *King*, 206 *Ga.* 530 (1), 57 S. E. 2d 617), there is another well-established principle of law that, while the evidence of a party testifying in his own behalf should generally be construed most strongly against him, it should still be construed in accordance with the manifest intent and purpose of the witness as disclosed by his testimony. *Golding* v. *Parrish*, 26 *Ga. App.* 495 (4) (106 S. E. 743). See also *Sappington* v. *Bell*, 115 *Ga.* 856 (1) (42 S. E. 233); *Chandler* v. *Southern Ry. Co.*, 113 *Ga.* 130, 132 (38 S. E. 305); *Lancaster* v. *Daniel*, 178 *Ga.* 264 (4) (172 S. E. 916); *Vogt* v. *Harris*, 209 *Ga.* 749 (75 S. E. 2d 808); *Southern Bank* v. *Goette*, 108 *Ga.* 796 (33 S. E. 974). We do not agree with counsel for the plaintiff in error that the testimony of the defendant was "equivocal if not altogether meaningless" (*Bullard* v. *Bullard*, 214 *Ga.* 122, 124, 103 S. E. 2d 570), when counsel, in what appears to have been an effort to clear up the statement, "no, not those exact words, I do not," elicited from the witness a positive statement, "I do not remember at all hearing him testify at that time, in connection with the payment of the agreed price for her interest, that he paid her the same as he did his brother Willie." In this case, the jury evidently found that the defendant did have notice at the time he took the deed from his brother Willie, that Willie had previously sold his share to the plaintiff, for they gave this share to the plaintiff, while, as to the sister's one-seventh interest, the evidence might have authorized a finding either way, but the jury saw fit to give this portion to the defendant. The trial judge, who heard the testimony and saw the witnesses, approved the finding of the jury. The question as to whether the defendant in error had actual notice, or as to whether the circumstances were sufficient to put him on notice of the state of the title, were questions to be determined by the jury. *Robinson & Johnson* v. *Rothchilds & Co.*, 10 *Ga. App.* 237, 239 (73 S. E. 554); *Dyal* v. *McLean*, 188 *Ga.* 229 (4) (3 S. E. 2d 571). While our conclusion might not have been the same as that reached by the jury, under the circumstances the jury was authorized to find that the plaintiff had failed to establish his contentions "beyond a reasonable doubt," as required by the decisions of this court in *Salmon* v. *McCrary*, 197 *Ga.* 281, 285 (29 S. E. 2d 58); *Harper* v. *Hudson*, 210 *Ga.* 751, 755 (82 S. E. 2d 854); and to "give the one-seventh portion claimed by Nancy

Faircloth to Leslie W. Dollar." Therefore, the first special ground of the motion for a new trial, in amplification of the general grounds, complaining that the verdict in so far as it found in favor of the defendant as to the one-seventh interest formerly owned by Nancy Faircloth in the lands in question is contrary to evidence and without evidence to support it, is without merit.

2. Special grounds 2 through 5 complain that the court erred in failing to charge the jury Code § 37-116, because one of the substantial issues as made by the evidence in the case was that the defendant had been put on notice sufficient to excite his passion and to put him on inquiry which if pursued would have revealed to him the paramount claim and equity of the plaintiff to the interest of Nancy Dollar Faircloth in the lands sought to be partitioned before defendant acquired his deed thereto; and special ground 6 complains that the court erred in charging the jury that, "if the circumstances were such as to put him [the defendant] on notice" of the claim or equity of the plaintiff, "then he [the defendant] would be bound by it and would not be entitled to prevail in this case," in the absence of and without a further charge to the jury of the principle of law as embodied in Code § 37-116. The trial judge charged the jury: "If you find that the defendant acquired title to the property as described in the deed to him from Mrs. Faircloth and Willie Dollar, then the defendant would acquire good title, unless you find that he had notice of the claim or the equity of the plaintiff. If the defendant had notice of the claim or the equity of the plaintiff, or if the circumstances were such as to put him on notice, then he would be bound by it and would not be entitled to prevail in this case. . . If you are satisfied that the plaintiff has established his case under the rules the court has given you in charge, or either of them, as to the two interests, then he would be entitled to prevail, unless you find that the defendant purchased the property without notice of the plaintiff's claim. Apply that rule to both the interest of Mrs. Faircloth and the interest of Willie Dollar." We see no error in this charge, which substantially covered the issues raised by the pleadings and evidence, since the plaintiff contended that the defendant had actual notice of his claim of equitable title to the property because of the testimony of the plaintiff delivered in

the defendant's presence in the court of ordinary. Code § 37-115; *Waller* v. *Dunn*, 151 *Ga.* 181 (3) (106 S. E. 93); *Bank of Arlington* v. *Sasser*, 182 *Ga.* 474 (3) (185 S. E. 826). Thus, the rule announced by Code § 37-116, that one having only such notice as would excite attention and put one on inquiry would be chargeable with notice of everything to which such inquiry might have led, was not directly involved; and if a charge of this principle was desired, a written request therefor should have been made. *Ellis* v. *Smith*, 10 *Ga.* 253 (8); *Street* v. *Lynch*, 38 *Ga.* 631, 638.

3. "In a bill for partition, it is not necessary that the complainant's title to the property should be fully set out." However, "The defendant may, by plea or answer, controvert the complainant's title to the whole or any part of the property, or deny the co-tenancy; in which events, a preliminary trial should be had, to settle these issues." *Rutherford* v. *Jones*, 14 *Ga.* 521 (1, 2). In this case, the defendant by his answer controverted the alleged ownership by the plaintiff as to two-sevenths of the lands in question, contending that he, and not the plaintiff, was the owner, and in the trial of this issue, which is now under review, it was not error, as contended by the cross-bill of exceptions, for the trial court to admit evidence relative to the acquisition of title by the plaintiff by parol contract and payment in full of the purchase price. *Lowry* v. *Lowry*, 150 *Ga.* 324 (1) (103 S. E. 813); Code § 85-1504; *May* v. *Sorrell*, 153 *Ga.* 47 (111 S. E. 810); *Evans* v. *Sawilowsky*, 179 *Ga.* 547 (4) (176 S. E. 625); *Barron* v. *Anderson*, 205 *Ga.* 487 (53 S. E. 2d 682).

*Judgment affirmed on both the main and cross-bills of exception. All the Justices concur, except Duckworth, C. J., who dissents.*

SUBMITTED SEPTEMBER 8, 1958—DECIDED OCTOBER 10, 1958—REHEARING DENIED NOVEMBER 7, 1958.

*Bell & Baker, R. A. Bell*, for plaintiff in error.

*Forester & Calhoun, Marcus B. Calhoun*, contra.

DUCKWORTH, Chief Justice, dissenting. It seems to me that the majority opinion is self-contradictory in that it recognizes the rule that requires a construction of testimony of a party in his own behalf, when contradictory, evasive, or equivocal, to give it a meaning most unfavorable to him, and they cite nu-

merous decisions applying that well-settled rule; then they proceed forthwith to violate the rule by giving to contradictory, equivocal, and evasive testimony of the defendant, given as a witness for himself, the construction most favorable to him. If the rule is not a farce, a legal trick, and an empty phrase, this court should follow and apply it without any exceptions whatsoever.

When the defendant, while testifying in his own behalf, admitted that he was present and heard the plaintiff testify in the court of ordinary, he thereby became inescapably bound by any notice the plaintiff's testimony gave. No one can reasonably deny this. The positive unequivocal testimony of the plaintiff is that in that court he testified that he purchased the land here involved for $1,300 and the seller agreed to execute a deed thereto later. There is not a semblance of evidence in this record to contradict the plaintiff's testimony. The defendant does not deny it. He does not even say he did not hear it, but simply rests his case upon his testimony that he did not at the time of this trial remember it. If he did not hear it, he could have so testified and thus sustained his case. If he did hear it, he could have so testified and thereby destroyed his case. He deliberately chose to refuse to take either of these straightforward positions and chose instead to evade both by testifying simply that at that time, when he was testifying, he did not remember. If he did not remember, and the plaintiff positively so testified, then there was no conflict in their testimony, which, taken together, means, and can only mean, that the defendant heard the plaintiff's testimony about his purchase of the land, and hence had notice thereof, and even though he remembered it on the very day he purchased, he did not remember it at this trial. He is thus shown to have bought with notice and subject to the previous sale to the plaintiff.

But the majority say his other testimony that he did not know of the plaintiff's purchase makes an issue on the question of notice. Again, I say that only by disregarding the law which requires that his testimony be given the strongest construction against him and reversing that rule of law to give it the most favorable construction can their conclusion be sustained. I

firmly believe the majority erroneously held that, even though the verdict can be sustained by construing the defendant's testimony most favorably to him, such verdict must be upheld. To so hold is to allow a jury to ignore this rule of law, and hence reduce it to nothing. One of the cases relied upon by the majority to sustain their ruling is *Southern Bank* v. *Goette*, 108 *Ga.* 796 (2) (33 S. E. 974). I would cite that case to sustain my position. It is there said: *"A person testifying in his own behalf is not entitled to a finding in his favor* [italics ours] if that version of his testimony the most unfavorable to him shows that the verdict should be against him. *Western & Atlantic R. Co.* v. *Evans,* 96 *Ga.* 481." The next sentence is: "Yet, if by his evidence he establishes a cause of action, or a defense, as the case may be, and from no view of his testimony would a finding against him be warranted," then and only then the jury may determine his credibility and find in his favor. This case is not one where in no view of his testimony would a verdict have been authorized against him. Instead, it is one where, when his testimony is measured by the rule, a verdict against him was demanded.

For the foregoing reasons I would grant this motion for a rehearing and on rehearing reverse the lower court.