46045.   KENDRICK et al. v. THE STATE.

ARGUED MARCH 1, 1971—DECIDED APRIL 15, 1971—
REHEARING DENIED MAY 18, 1971—CERT. APPLIED FOR.

786

*William V. Hall, Sr., Alford Wall, Ronald J. Armstrong, H. A. Stephens, Jr.,* for appellants.

*Lewis R. Slaton, District Attorney, Tony H. Hight,* for appellee.

DEEN, Judge. ■ (a) The indictment follows the statutory language of *Code Ann.* § 26-3001 (a) in charging that the defendants did "in a clandestine manner [conspire to] intentionally overhear, transmit and record and attempt to overhear, transmit and record the private conversation of one [Darracott] which originated . . . in a [stated] private place." This is followed in the same count by a charge in the language of *Code Ann.* § 26-3001 (d) that the defendants "did intentionally and secretly intercept, by the use of a device, instrument and apparatus, to wit: a telephone, the contents of a message sent by telephone" which is followed by a specific description of the acts charged: that defendants disconnected the regular telephone service of number 876-2224 in the Tenth Street Exchange and then connected the wires of this number to the connections on number 872-7779 in the exchange which was the number of Darracott located in his home at No. One Tenth Street, "so that when the said Darracott's telephone would ring the telephone of accused would ring indicating a caller on the said Darracott's telephone which due to said connection the conversation on

Darracott's telephone could be overheard on defendant's telephone." There is no proof that anyone actually listened to Darracott's telephone conversations by being alerted thereto through the ringing of a bell and picking up the receiver and thus intercepting the conversation. There is proof that the telephone was in working order when the service man left the apartment, so that after the jumper wire was installed at the branch exchange this would have been the result had anybody in the defendants' apartment picked up the phone and listened, provided the phone remained connected as installed or provided that, after being disconnected, it was reconnected to the line in any way (directly or through an actuator) so that it could have received the electrical impulses. There is proof that Kendrick had tapes containing Darracott's conversation over the telephone in his apartment, and that such conversations would have been taped by removing the telephone and installing a tape recorder and actuator in its stead so that when Darracott's telephone rang the tape recorder would automatically turn on, and there is expert testimony that such a set-up would have produced the tapes Kendrick played for the witness and also that the telephone could have been attached so that both would work at the same time. When the apartment was searched no recorder was found and the telephone had been removed and improperly reattached so that it served no function. Additionally, there is opinion testimony that "telephone" means not just the installed set which was State Exhibit 9 but the whole telephone system or that part of it which is used in transmitting electrical impulses and converting them into other forms of energy such as sound or electromagnetic tape in the case of a recording device. It is obvious that the language following subsection (d) regarding a telephone refers to and limits the act of interception referred to therein to one committed by the use of a telephone receiver with a bell, allowing a person alerted by the bell in Hart's apartment to pick up the receiver and listen in on the conversation in Darracott's apartment. It is also true that the act of listening to a telephone receiver is different from recording the conversation as by means of a tape recorder. The defendant may well be correct in arguing that the method of interception set out in detail (being alerted to a conversation by the ringing of the bell in the defendant's apartment,

picking up the receiver and listening in) was not proved beyond a reasonable doubt, and that such failure of proof constitutes a fatal variance in regard to this allegation. "If the indictment sets out the offense as done in a particular way the proof must show it so, or there will be a variance." *Fulford v. State,* 50 Ga. 591, 593. And see *Allen v. State,* 106 Ga. App. 761 (128 SE2d 549). Subsection (a), however, charging the defendants with recording the conversation was sufficiently alleged (*Code* § 27-701; *Benefield v. State,* 86 Ga. App. 285 (71 SE2d 760)) and was supported by proof that the recordings were in fact made, although the telephone might or might not have been connected up and used at the same time. "The fact that the accusation charges, in a single count, the commission of the offense in several of the methods prescribed by the statute does not make it subject to general demurrer, none of the methods alleged being repugnant to the other. The offense could have been established by proof of any one of the prohibited acts." *Gower v. State,* 71 Ga. App. 127, 130 (30 SE2d 298). Since the telephone receiving set installed in the apartment does not "record," the fact that subsection (d) was not proved as alleged has no effect on the allegations as to recording under subsection (a) of the statute penalizing eavesdropping.

(b) It is further contended that the verdict cannot be supported under allegations of the indictment that the defendants on trial "did conspire with some person who is to the grand jurors unknown." However, the crime could not have been committed had a jumper wire not been placed connecting the two telephone lines on the frame within the telephone branch office which serviced them both, and there is not the slightest evidence that either of these defendants had access to that location. The procedure was one in common use by the employees of the telephone company for lawful purposes so that the inference would be that some unknown employee was a co-conspirator with the defendants. Further, Mrs. Darracott testified that she paid the defendant Kendrick money in cash which he told her he would give to someone who would tap the phone, and that he did not reveal the name of this person to her. Although verdicts have been overturned where the indictment alleged the defendant conspired with persons unknown and it transpired that such persons were in fact known to the

grand jury (see *Martin v. State,* 115 Ga. 255 (41 SE 576)) a reading of the cases shows that the common law reasoning back of this rule is the protection of the defendant from being again indicted for the same offense. The indictment here has the required specificity, and the proof shows that the identity of at least one of the persons primarily involved in the crime is unknown. The fact that the witness who employed one of the defendants was known and appeared before the grand jury does not vitiate the conviction. See also 5 Wharton's Criminal Law and Procedure, § 2064, p. 214 et seq.

■ Whether or not questions of personal protection and the welfare of minor children sufficiently establish a waiver of the right of privacy during proceedings leading to divorce (see *Bodrey v. Cape,* 120 Ga. App. 859 (172 SE2d 643)) so as to be the equivalent of an implied consent which will obviate a tort action (*Code* § 105-1803), eavesdropping is also a crime against the State. One who for a consideration engages in such criminal activity cannot base a right to acquittal on the fact that the motives of the person desiring the information are extenuative in nature. Involvement in a divorce action is not the equivalent of implied consent under *Code Ann.* § 26-3006 to have one's telephone line tapped.

■ That the court in giving a requested instruction charged that the defendants enter upon the trial with the presumption of innocence in their favor, which presumption remains until the jury is satisfied of their guilt "beyond a reasonable doubt" instead of "beyond all reasonable doubt" is no ground for reversal. The court in fact charged on reasonable doubt on seven different occasions and did in fact use the term "all reasonable doubt" on some of them. "Failure to charge in the exact language requested, where the charge substantially covered the same principle, is no longer a ground for a new trial under *Code Ann.* § 70-207 as reenacted." *Hardwick v. Price,* 114 Ga. App. 817 (3) (152 SE2d 905).

■ Whether or not the husband in the divorce action had committed acts as contended by the wife had no relevancy or bearing on the trial of these defendants for the offense of wiretapping. The trial judge may properly restrict the cross examination of a witness to matters relevant to the issue. *Quinton v. Peck,* 195 Ga. 299 (5) (24 SE2d 36).

■ *Code* § 38-1703 provides: "In all cases either party shall have the right to have the witnesses of the other party examined out of the hearing of each other. The court shall take proper care to effect this object as far as practicable and convenient, but no mere irregularity shall exclude the witness." The right of sequestration is absolute. *Massey v. State,* 220 Ga. 883, 893 (142 SE2d 832). It is mandatory for the court to accede to a request for sequestration of witnesses, subject to the "sound discretion of the trial judge in permitting one or more witnesses to remain in the courtroom to advise the opposite party in the presentation of his case, and where it appears that in making the exception to the rule the fair [trial] rights of the opposite party are secured or the impairment of the efficiency of the court avoided by allowing a deputy or other officials, who are witnesses, to remain in the courtroom." *Poultryland, Inc. v. Anderson,* 200 Ga. 549, 562 (37 SE2d 785). Here it is contended that the first exception to this rule allowed the judge, in his sound discretion, to permit Russell Parker, division security manager for the Atlanta area of Southern Bell Telephone Company and a stipulated expert electrical engineer and security man, to remain in the courtroom without being called as the first witness upon the assistant district attorney's statement in his place that he needed him to sit at the table with him on the trial of the case. Parker testified to his own activities between the time of his notification of the discovery of the jumper wire connecting the telephone circuits and the final identification of Kendrick and Hart; gave opinion evidence as to the method used in eavesdropping, and expert testimony on the operation of the system. Since much of the State's case depended on the proper presentation of expert testimony on the method of operation of the system and the branch office and on the complexities of electronic eavesdropping, it is fairly obvious why the State wanted an expert sitting at its table. It then becomes a question of whether the fair trial rights of the defendants were in any way impinged upon by the witness' presence. He was not, as in *Hunter v. State,* 105 Ga. App. 564 (125 SE2d 85) used for rebuttal testimony. His testimony does not appear to have been influenced (nor could it have been influenced) by the testimony of other witnesses for the State. Harm

will not be absolutely presumed from his presence alone, as in *Montos v. State,* 212 Ga. 764 (95 SE2d 792) where the witness' presence was not requested under any such exception to the rule as would invoke the discretion of the trial court. We find no error. *Justice v. State,* 213 Ga. 166 (2) (97 SE2d 569); *Tanner v. State,* 213 Ga. 820 (2) (102 SE2d 176).

*Judgment affirmed. Bell, C. J., and Pannell, J., concur.*