## A94A1270. BEAN et al. v. LANDERS.
### (450 SE2d 699)

Beasley, Presiding Judge.

Kelly Landers, by next friend Karen Landers, sued James Bean, M.D., his professional corporation, another physician, and the hospital for medical malpractice, alleging that their actions before and during his birth by Caesarean section resulted in brain damage, blindness, and cerebral palsy. The hospital was dismissed prior to trial. After a trial of over two weeks, the jury returned a verdict for defendants, and the court entered judgment on it. Landers moved for new trial, which was granted as to Dr. Bean and his corporation. The other physician was dismissed from the action after the court stated it would not grant the motion as to him. We permitted Bean's interlocutory appeal.

1. The parties dispute the standard of review. A new trial was granted on a special ground and the court expressly rejected the general grounds specified in OCGA §§ 5-5-20 and 5-5-21 (verdict contrary to evidence and the principles of equity and justice, verdict decidedly and strongly against the weight of the evidence). As to the general grounds, plaintiff claimed that the verdict was contrary to the law, contrary to the evidence, and strongly against the weight of the evidence. The court particularly noted that the evidence was in Dr. Bean's favor.

The special ground cited by the court is the cumulative effect of the conduct of Bean's counsel during trial, which the court found to be unprofessional. The court further found that the conduct was harmful and stated that it could not conclude that the harm to plaintiff could be removed by its curative instructions. The court concluded that the plaintiff had not had a fair opportunity to present his case to the jury. At the same time, the court implied that the result "more than likely would have been the same" had the conduct not

occurred.[1]

Three specific instances of conduct were cited by the court: violation of the court's order concerning introduction of information on collateral source benefits, violation of the rule against sequestration, and improper closing argument. The only special grounds asserted by Landers in his motion were the issues concerning sequestration and closing argument; the court itself brought up the issue of collateral source benefits during the hearing on the motion.

"In all motions for a new trial on [non-statutory] grounds . . . the presiding judge must exercise a sound legal discretion in granting or refusing the same according to the provisions of the common law and practice of the courts." OCGA § 5-5-25. "The first grant of a new trial shall not be disturbed by an appellate court unless the appellant shows that the judge abused his discretion in granting it and that the law and facts require the verdict notwithstanding the judgment of the presiding judge." OCGA § 5-5-50.

*Smith v. Telecable of Columbus,* 238 Ga. 559, 560 (234 SE2d 24) (1977), dealt with an instance of influence on the jury inside the courtroom during the course of trial, i.e., an instruction given to the jury. The court held that the first grant of a new trial on special grounds involving a question of law is reviewable on appeal. This governs our consideration. *Cobb County Kennestone Hosp. Auth. v. Crumbley,* 179 Ga. App. 896 (348 SE2d 49) (1986); *U. S. Indus. v. Austin,* 197 Ga. App. 74 (1) (397 SE2d 469) (1990). Upon remand of *Smith* to this court, we determined that the trial court had improperly granted a new trial because it had made an error of law in that the evidence *did* support the court's original charge to the jury on res ipsa loquitur. *Smith v. Telecable of Columbus,* 142 Ga. App. 535 (236 SE2d 523) (1977). Thus if the trial court erred as a matter of law in granting a new trial because of the cumulative effect of specified counsel conduct, it must be reversed. *U. S. Indus.,* supra at 75 (2).

In this case, the court determined that counsel's conduct had deprived Landers of a fair opportunity to present his case. " ' "[M]otions for (new trial) because of improper conduct of jurors or parties are addressed to the sound discretion of the trial judge. (Cit.) Unless there is an abuse of discretion, the appellate court will not upset the trial judge's determination. (Cits.)" [Cit.]' [Cit.]" *Bldg. Materials Wholesale v. Reeves,* 209 Ga. App. 361, 364 (3) (433 SE2d 346) (1993). In that case, the court applied this standard to an out-of-court communication between an attorney and a juror, drawing the standard from *Wright v. Satilla Rural Elec. Coop.,* 179 Ga. App. 230,

---

[1] The jury returned a verdict for both defendants after deliberating for 15 minutes, and their affidavits indicate that none ever voted in favor of plaintiff.

231 (1) (345 SE2d 892) (1986), in which a party had communicated out of court with a juror. Both of these cases dealt with influences on a juror outside the courtroom. The court in *Wright* reiterated the underlying fundamental principle for the rule, that "the purity and integrity of our jury system must be strictly enforced." Id. at 231. Indeed, it needs no citation of authority to say that it is a hallmark and crucial element of our system of justice.

2. Violation of the motion in limine on collateral source benefits was the first of the three instances of attorney conduct to arise at trial. When information on rehabilitation programs available through public schools was introduced, Landers objected. Although the court's pre-trial order on the matter was unclear, and the motion itself refers to "collateral source payments," the court sustained the objection and gave a curative instruction. Landers did not move for a mistrial or object to the instruction.

Nor was this alleged violation specified in Landers' motion for new trial as a special ground. It was introduced by the court at the hearing, despite the fact that the issue was related to damages and the jury by its verdict found no liability, a prerequisite to a consideration of damages. See *U. S. Indus. v. Austin,* supra at 75. It was an error of law to base a grant of a new trial on the jury's knowledge of the collateral source information because it related only to the question of damages, which the jury did not reach, and thus it was not harmful. Id. For this reason it becomes no more harmful when considered cumulatively with the other two instances of attorney conduct which the trial court concluded were not adequately cured by its instructions.

Moreover, since it was not one of Landers' special grounds, and the hearing was held more than 30 days after judgment, it could not be the basis of a grant of new trial on the court's own motion under OCGA § 5-5-40 (h).

3. The second instance of attorney conduct concerned the sequestration of witnesses, which was in effect pursuant to OCGA § 24-9-61. It prohibits witnesses from being examined in the presence of each other. *O'Kelley v. State,* 175 Ga. App. 503, 504 (1) (333 SE2d 838) (1985). Such knowledge is regarded as giving an unfair advantage to the party whose witness hears the other witnesses before the witness testifies and thus can tailor his or her testimony accordingly. However, expert opinion "may be given on the facts as proved by other witnesses." OCGA § 24-9-67. Nevertheless, Bean had not asked that the expert be excepted from application of the rule. See *Bartell v. State,* 181 Ga. App. 148 (1) (351 SE2d 495) (1986), regarding the sequestering of an expert witness. In Georgia, the expert is not automatically excepted from the rule because of the view that ordinarily it is not necessary for the expert to hear the testimony of the plaintiff's

witnesses in order to form an opinion; "the proper mode of examination is by hypothetical questions." *Bartell*, supra at 149 (1); *Simonds v. Conair Corp.*, 185 Ga. App. 664, 665 (2) (365 SE2d 507) (1988). Excepting the expert from the rule is acceptable. *Huskins v. State*, 245 Ga. 541 (266 SE2d 163) (1980); *Kendrick v. State*, 123 Ga. App. 785, 790 (182 SE2d 525) (1971). See, e.g., *Morvant v. Constr. Aggregates Corp.*, 570 F2d 626, 629-630 (6th Cir. 1978), cert. dismissed, 439 U. S. 801 (99 SC 44, 58 LE2d 94) (1978); *Mayo v. Tri-Bell Indus.*, 787 F2d 1007 (5th Cir. 1986); *Lapenna v. Upjohn Co.*, 665 FSupp. 412 (E.D. Pa. 1987).

When Bean's final expert witness was called, his testimony indicated that the court's order on sequestration of witnesses had been violated in that Bean's attorney had discussed with him some of the testimony of one of plaintiff's expert witnesses (whose deposition he had read), a treating physician, and other witnesses. Landers objected but did not ask for a mistrial. He did, however, ask that the testimony of this witness be stricken. The court did not strike the witness' testimony, stating that a violation of the rule affects credibility but not admissibility. In consequence, the court gave curative instructions to the jury, admonishing Bean's attorney and advising that the violation could be considered by the jury in assessing the witness' credibility. The out-of-court discussion was then explored with the witness on cross-examination before the jury.

OCGA § 24-9-61 provides that "no mere irregularity [in sequestration] shall exclude a witness." As expressed in *McCartney v. McCartney*, 217 Ga. 200, 202 (7) (121 SE2d 785) (1961), "the disobedience of an order of sequestration is a mere irregularity, subjecting the offender to punishment for contempt and may affect his credit as a witness, but it does not render the witness incompetent." See also *Intl. &c. Iron Workers, Local 387 v. Moore*, 149 Ga. App. 431, 435 (10) (254 SE2d 438) (1979). Thus, the trial court applied the proper legal measure with respect to the sequestered witness' testimony during trial.

In granting the new trial, the court did not rule that the testimony of the witness would be barred from it, nor would such be a proper course under Georgia law, as demonstrated by *McCartney* and *Moore*, supra. Therefore, a new trial would produce no change in this aspect of the evidence before a new jury. In fact, the witness would not only have the benefit of whatever information he may have received about other witnesses' testimony before his own was given, but he could now review the transcript of the entire first trial.

Reprimanding counsel on the spot and instructing the jury about credibility at that point had at least as profound an effect on the jury as would pointing out to a different jury at some future time that the witness had learned of the testimony of other witnesses before he tes-

tified. Another jury in this case would know the same thing that this jury did, and its integrity would be protected by the same measure, i.e., cautionary instructions.

It was an error of law to base a new trial on an issue that had been properly addressed at trial and would not be changed materially on retrial. See *Cobb County Kennestone Hosp. Auth. v. Crumbley*, supra at 898. Treating the violation in conjunction with other instances of improper conduct gave it no greater force.

4. The third instance underlying the special ground concerned improper argument. Bean's counsel referred in closing argument to deposition testimony that had not been placed before the jury. A certain physician, Dr. Adler, had treated Landers after birth but was not called to testify at trial by either party.

During Landers' closing argument, counsel argued that, from the medical records submitted and the testimony of Dr. Adler's partner, the jury could conclude that Dr. Adler had diagnosed that Landers suffered from perinatal asphyxia as a result of the actions of the medical personnel who treated him before and during birth, including Dr. Bean. The evidence suggesting such an inference was before the jury: Dr. Adler's partner had identified a visual exhibit as an enlargement of a hospital chart with a notation in Dr. Adler's handwriting reading "perinatal asphyxia," the condition Landers contends was caused by Bean's negligence and produced his injuries.

In her closing arguments, Bean's counsel countered that Dr. Adler had been deposed by plaintiff at length and stated during deposition that he did not believe Landers suffered birth asphyxia. The deposition was not in evidence.[2] Landers objected, the court sustained the objection, gave a curative instruction, and admonished Bean's counsel in front of the jury. In making his objection, Landers stated "I'm not asking for a mistrial. We've gone two-and-a-half weeks, but I would respectfully ask this Court to admonish [counsel] and to instruct the jury to disregard that comment," and did not make further request in the matter after the instruction.

Again, the court's original ruling was proper and its decision did not present any error that it was required to correct by the grant of a new trial. The court did not conclude that this instance of counsel's conduct alone warranted a new trial. Instead, it concluded that only when taken cumulatively with the other two instances of counsel's conduct was a new trial warranted.

---

[2] In an after-trial affidavit, Dr. Adler averred he had not been asked during deposition about the notation on the chart but had made clear that in his opinion Landers did not suffer perinatal or intrauterine asphyxia as a result of obstetrical care or treatment and instead suffered an intracerebral hemorrhage not caused by asphyxia resulting from obstetrical care or treatment.

When the instances of counsel's behavior arose at trial, the court corrected each in a manner that did not require any further action insofar as the fairness of the trial is concerned. None of the court's rulings were erroneous, as a matter of law. The court intimated in its order that the result of any new trial would likely be the same and stated in both its order and during the hearing that the weight of the evidence was strongly in Bean's favor. "[W]hile litigants are entitled to a *fair* trial, they are not necessarily entitled to a *perfect* trial." *Ga. Power Co. v. Hendricks*, 130 Ga. App. 733, 734 (4) (204 SE2d 465) (1974). The court's original rulings produced a fair trial, although it may have been imperfect.

It is the role of the courts to "see to it that the jury are kept free from influences which may tend to bias or prejudice their minds for or against the cause of either party they are empaneled to try." *Alabama Great Southern R. Co. v. Brown*, 140 Ga. 792, 795 (1) (79 SE 1113) (1913). Here the court took corrective measures to assure that the jury was not prejudiced. By its corrective instructions, the court assured adherence to the rule that "on the trial of cases, no fact should ever go to the jury except through the legally appointed channels." *Johnson v. State*, 88 Ga. 606, 608 (1) (15 SE 667) (1891). As said in that case: "It is absolutely indispensable to the fair and proper administration of the law that this plain and just rule should be invariably observed." Id. at 608 (1). The court fulfilled its duty to protect the integrity of the jury. The court's original rulings and instructions protected the deliberations and verdict from prejudice as a matter of law. Thus, the court erred in determining that a new trial was authorized.

Our ruling is not to be taken as condoning unprofessional conduct. While such is a serious matter, there are a variety of sanctions available in situations involving it and we note that a motion for sanctions has been made below pursuant to OCGA §§ 15-1-3 and 15-1-4. See *Stoner v. Eden*, 199 Ga. App. 135, 138 (3) (404 SE2d 283) (1991); *Urban Med. Hosp. v. Seay*, 179 Ga. App. 874, 877-879 (348 SE2d 315) (1986) (Beasley, J., concurring in part and dissenting in part).

In sum, the verdict was not affected by the first, court-raised instance of the impropriety of counsel introducing inadmissible evidence because the conduct addressed an issue not reached by the jury. Second, a new trial would not cure, any more than did the court's instructions and admonition, counsel's discussing plaintiff's evidence with the witness before his testimony. The effect on the witness' credibility was made clear to the jury. Third, although the closing argument was improper, the trial court concluded that the properly admitted evidence was in defendant's favor, and that counsel's improper argument warranted a new trial only in conjunction with the other two instances. As two of the three instances which occa-

sioned the court's grant of a new trial are eliminated, the court's conclusion that the three cumulatively warranted a new trial was erroneous.

5. Bean's other enumerations of error are moot.

*Judgment reversed. Andrews and Johnson, JJ., concur.*

DECIDED AUGUST 23, 1994 —
RECONSIDERATION DENIED NOVEMBER 29, 1994 —

*Love & Willingham, John A. Gilleland, Kimberly L. Woodland, Banks & Stubbs, Rafe Banks III, Morris, Manning & Martin, Rachel K. Iverson*, for appellants.

*Johnson & Cooper, Jean E. Johnson, Jr., Lance A. Cooper*, for appellee.