## A98A1351. LEWIS v. EMORY UNIVERSITY.
### (509 SE2d 635)

BEASLEY, Judge.

Judith Lewis appeals a judgment entered on a jury verdict in favor of Emory University d/b/a Crawford Long Hospital arising out of her husband's death following a heart attack for which he received treatment at defendant hospital. Lewis enumerates four errors of the court: refusing to allow her to qualify prospective jurors with regard to their relationship with Emory's excess insurance carrier; failing to allow testimony of statements made by a witness who died before trial; prohibiting cross-examination of a defense expert with a document upon which the expert relied; and prejudicing the jury by repeatedly charging that they could not guess or speculate.

1. Prior to jury selection, the trial court asked the lawyers to identify any insurance carrier in the case. Emory's counsel explained that Emory was self-insured for the first $3,000,000 and that St. Paul Fire & Marine Insurance Company provided excess coverage thereafter. The court asked if St. Paul was a mutual company, to which defense counsel responded that it was a stock company. The court explained it understood judges are not required to qualify the jury with respect to insurers that are stock companies. Lewis' counsel objected and argued that regardless what type company it was, the court was required to qualify the prospective jurors as to whether they were stockholders, employees, officers, directors or had a financial interest in St. Paul. The court disagreed but allowed Lewis' counsel to ask comprehensive questions about each prospective juror's employment background.

During closing argument, Lewis asked the jury to award up to $4,800,000 damages, but it awarded none. Lewis moved for a new trial but the motion was denied.[1]

The long-standing Supreme Court decision in *Atlanta Coach Co.*

---

[1] "Motions for new trial because of improper conduct of jurors or parties are addressed to the sound discretion of the trial judge. Unless there is an abuse of discretion, the appellate court will not upset the trial judge's determination." (Citations and punctuation omitted.) *Bean v. Landers,* 215 Ga. App. 366, 367 (450 SE2d 699) (1994).

*v. Cobb*[2] mandates reversal. The Court considered the competing policies of the plaintiff's right to a panel of impartial jurors from which to select a jury and the rule prohibiting mention of indemnity contracts during trial proceedings.[3] It reasoned that a non-party insurer's "own interest in the result of the litigation would appear to be equal to, if not even greater than, that of the defendant; and when it once appears that an indemnity contract does exist in a particular case, the matter of purging the jury as to relationship to such company is not less important than if the company were an actual party."[4]

The Court held that officers, employees, and stockholders and relatives of stockholders of a non-party insurance company which may be liable for a judgment rendered in the case are disqualified as a matter of law from serving as jurors and that refusing to allow plaintiff's counsel to so qualify the jury creates a presumption of injury.[5] This presumption cannot be overcome after the verdict by affidavits asserting that no juror was disqualified.[6] These rules have been followed recently in *Dalton v. Vo*[7] and *Arp v. Payne.*[8]

The trial court misunderstood the difference between how mutual and stock companies are handled. The jury must be qualified for both types of insurers with regard to officers, employees, and stockholders and their relatives.[9] The jury need not be qualified as to policyholders in stock companies because such policyholders do not have any interest in the assets of the company; mutual company policyholders are shareholders or otherwise have an interest in the assets of the insurer and therefore none can serve on the jury.[10]

Emory insists a jury need not be qualified as to an excess carrier. Certainly here, where Lewis sought damages exceeding the primary coverage, there is no ground for excluding the excess carrier from application of the *Atlanta Coach* rule. Both insurers were non-party insurance companies potentially liable for a judgment. The answer to whether the same rule would apply if the plaintiff sought damages in an amount less than the primary coverage must await another day. The trial court's failure to qualify the jury as to St. Paul was error.

---

[2] 178 Ga. 544 (174 SE 131) (1934).

[3] Id. at 549-550.

[4] Id. at 550.

[5] Id. at 549, 551.

[6] Id. at 552.

[7] 230 Ga. App. 413 (2) (497 SE2d 245) (1998) (non-precedential), and cases cited therein.

[8] 230 Ga. App. 840 (497 SE2d 810) (1998) (non-precedential), and cases cited therein.

[9] See *Dalton v. Vo*, supra.

[10] See generally *Patterson v. Lauderback*, 211 Ga. App. 891, 893-894 (3) (440 SE2d 673) (1994), overruled on other grounds, *Warren v. Ballard*, 266 Ga. 408, 410 (2) (467 SE2d 891) (1996).

As explained by *Atlanta Coach*, the error is "presumptively harmful."[11] Although the Supreme Court indicated the presumption possibly could be rebutted, it did not set out a guide to determine the method or criteria to be satisfied. The manner in which the court in this case attempted to rebut the presumption of harm is analogous to the unsuccessful attempt made in *Atlanta Coach*.

Immediately after the verdict was announced the following dialogue occurred: "THE COURT: All Right. Again, I want to thank you. Take that around to — let them see it before the jury leaves. Now, you're free to talk to the lawyers about this if you choose. And as a matter of information, not that [it] had anything to do with the case and the case is over now, I want to ask you a question that we debated early on. Are any of you employed by, as an employee, a stockholder or an officer, with the St. Paul Insurance Company? Any or you? THE JURY: No. THE COURT: Anybody in your immediate family work for that company? (No Response). THE COURT: All right. Let the record show none of them. All right, you're free to go. And, again, I thank you very sincerely."

First, the court failed to ask whether the jurors were related to anyone who was a stockholder of St. Paul, which is required under *Atlanta Coach*.[12] As stated recently in *Dalton v. Vo*,[13] "controlling case law does not limit this right to inquire to policyholders of mutual companies but extends it to officers, employees, stockholders or anyone related to stockholders of the insurance company." Second, like the affidavits in *Atlanta Coach*, the court's offhand inquiry, made at a time not only after the verdict but also ambiguous as to whether the jury had been excused, failed to substitute for a voir dire. True, it was in open court and before the jury dispersed, but that post-purge was an insufficient remedy for the omission of the right "to pursue the lawful procedure in the selection of a jury."[14] *Atlanta Coach* held that affidavits asserting there are no grounds for disqualification among the jury panel which are offered after trial are insufficient to rebut the presumption of error. "After verdict, the jurors could not impeach their finding by showing their own disqualification, not even in reply to others who may have testified in vindication of the verdict, nor, indeed, by explaining any error or mistake which might have been made in their original affidavits, and which might have been discovered on further examination."[15] "[T]he plaintiff had the right to

---

[11] *Atlanta Coach*, supra, 178 Ga. at 551.
[12] Id. at 549, 552.
[13] Supra at 413.
[14] *Atlanta Coach*, supra at 550.
[15] *Atlanta Coach*, supra at 552.

a panel of . . . impartial jurors from which to select the trial jury."[16] "[I]t is apparent . . . that after verdict the plaintiff did not have the same opportunity of discovering and proving possible disqualifications which she was entitled to exercise upon the trial, the same having been seriously curtailed by the rendition of the verdict and the consequent application of the rule that jurors can not impeach their finding."[17] "The question as to the competency and impartiality of the jurors is thus to be determined *before the parties begin to strike a jury.*"[18] Third, the post-verdict inquiry procedure is counterproductive to the efficient administration of justice by creating an unnecessary risk. As stated in *Atlanta Coach*:[19] "The validity of a trial should not be hazarded by a possible relationship upon the theory that the plaintiff could be protected by the grant of a new trial should it appear after verdict that a juror was so disqualified."

The dialogue between the court and the jury after the verdict in this case suffers from the same infirmity as the affidavits in *Atlanta Coach*. Most importantly, the answers given by the jury were after the verdict and therefore subject to the rule that jurors cannot impeach their own findings. Emory argues the jurors were still in court under oath when they answered the court's questions. However, we see no operative difference between a juror's answering the court's questions after the verdict and submitting a sworn affidavit sometime thereafter. Neither overcomes the presumption of harm. For one thing, neither effort subjects the jurors to examination by counsel.

Emory counters that the jurors were not incompetent to testify after the verdict because their testimony supported the verdict.[20] *Atlanta Coach* addressed this argument as well. "If the plaintiff was entitled to have the examination as to relationship conducted in open court and before verdict while the jurors were competent to testify against as well as for their qualification, the error in denying this right was not cured by the submission of affidavits procured by the defendant out of court and after verdict, when the jurors could legally testify only one way on the question, and by offering to permit the plaintiff to make a counter-showing. This was to fall materially short

---

[16] Id. at 549.

[17] Id. at 552. This rule is still the law with certain limited exceptions. OCGA § 9-10-9; *Turpin v. Todd*, 268 Ga. 820, 823 (1) (c) (493 SE2d 900) (1997); *Watkins v. State*, 237 Ga. 678, 683-686 (229 SE2d 465) (1976).

[18] (Emphasis in original.) Id. at 555. "The public policy of this State is to keep jury trials free from suspicion of irregularity or impropriety of conduct. A method for assuring such, and an expression of the policy as a right, is provided in OCGA § 15-12-133." *Fidelity Nat. Bank v. Kneller*, 194 Ga. App. 55, 59 (1) (390 SE2d 55) (1989).

[19] Id. at 550.

[20] OCGA § 9-10-9.

of restoring what had been taken away by an erroneous ruling, and the plaintiff was not bound to accept the substitute. . . . A mere fragment of the right does not satisfy the whole."[21] In other words, the law itself provides the negative factual answer, without an opportunity to discover whether it is true factually or not. In addition, the Supreme Court specifically overruled case law requiring a party who complained that the court failed to purge the jury of relatives of the other party, to either allege or prove that a relative was on the jury.[22]

The problem of timing in this case meets the problem of identifying. This Court has suggested there must be a better way to gather the necessary information from the prospective jurors without informing them that an insurance company is interested in the outcome.[23] But here, although the court attempted to allow plaintiff's counsel some leeway during voir dire, the court did not propose or implement a comprehensive solution for unearthing the relevant facts from the jurors without mentioning that an insurance company had an interest. It is "the duty of the court, on proper application, to provide a competent and impartial jury."[24]

We are constrained to follow *Atlanta Coach*: "[A]n interest [in the litigation] can not be concealed or shrouded in mystery, where to do so would abridge the right of a plaintiff to pursue the lawful procedure in the selection of the jury."[25] Throughout the trial, the parties did not know whether a juror was disqualified as to St. Paul.

The remaining enumerations are addressed to avoid recurrence on retrial should there have been error.

2. Jim Lewis was in the hospital suffering from chest pains early on the morning of April 7, 1992. He was placed in a room for emergencies and attached to cardiac monitoring equipment. At approximately 4:40 a.m. Lewis was discovered in a cyanotic, apneic and pulseless state. Sheila Milner, the respiratory therapy supervisor on duty, was among the medical personnel who responded to a call for help and she is the person who intubated Lewis during the attempt to resuscitate him.

Ms. Milner died three months after this suit was filed and before trial. Her deposition was never taken. Plaintiff sought to introduce statements allegedly made by Milner to two colleague therapists, one when he came on duty the next morning and the other, Lewis' twin

---

[21] *Atlanta Coach*, supra, 178 Ga. at 552-553.

[22] Id. at 554-555.

[23] See *Franklin v. Tackett*, 209 Ga. App. 448, 450-455 (433 SE2d 710) (1993) (Beasley, P. J., concurring specially); *Byrd v. Daus*, 218 Ga. App. 145 (1) (460 SE2d 819) (1995); *Dalton v. Vo*, supra.

[24] *Atlanta Coach*, supra at 551. See also *Roberts v. State*, 189 Ga. 36, 44 (2) (5 SE2d 340) (1939) (trial judge has responsibility for a fair and impartial jury).

[25] 178 Ga. at 549-550.

brother, within a week or so after the episode. The evidence, which the court disallowed, was as follows:

Witness James Todd (the next morning): "I had asked her did she have a hard time getting Jim intubated, and she said no, that he was a very easy intubation. And she commented on the fact that he was — she said he was as blue as she had ever seen anybody.

"Q. Did she say anything at all about Jim's jaw being clenched?

"A. No.

"Q. Anything at all about him being in seizure?

"A. No."

Witness Thomas Lewis: "She (Milner) told me over the phone — I had called during the night shift and asked her, were you the therapist on that night, or supervisor, rather, and she said yes. And I just asked, do you know what went on in the ER. And she said she responded to the doctor 99 quickly, she ran into the room and it was a zoo, she saw Jim on a stretcher and didn't recognize him at first because from the waist to his head he was very blue. She said she went to the head of the stretcher to intubate him because the ER physician had not been able to slip a tube. I asked her if he was a difficult intubation. She said, no, he was easy, he was limp. She said it looked like he had been down for awhile and that she had never seen anyone any bluer than he was."

The statements were offered under the "necessity exception" to the hearsay rule. OCGA § 24-3-1 (b). "The statutory exceptions to the rule against the admission of hearsay are not exhaustive and exclusive of all other cases. An exception will be allowed 'from necessity' where 'necessity' and 'particularized guarantees of trustworthiness' are established."[26]

Lewis urges Milner's testimony is necessary because whether the intubation was difficult helps show how long her husband had been in cardiac arrest before he was discovered in that condition. This in turn was allegedly material to whether Lewis was beyond redemption when discovered and his life-threatening condition should have been discovered earlier or, contrarily, cardiac arrest had just occurred so the attempted resuscitation was timely. According to Emory's expert: "The jaw was clenched tightly making it difficult for intubation to be done. Again, in my experience that is a very important sign that one is very early in the resuscitation." The expert concluded that Lewis' cardiac arrest was "detected extremely quickly."

Emory argues the statements were not relevant because others witnessed these events. Before Milner arrived in Lewis' room after

---

[26] (Citations omitted.) *McKissick v. State*, 263 Ga. 188, 189 (3) (429 SE2d 655) (1993); *Chrysler Motors Corp. v. Davis*, 226 Ga. 221, 226 (1) (173 SE2d 691) (1970).

the call for help arose, at least five other medical personnel including one doctor were present. One such witness testified that when she arrived, Lewis was rigid, his fists were clenched, and his head was tilted back. Another said he was stiff and arched with his head flung back. A third said he was rigid, seizing, his back arched, and his teeth were clenched. A nurse testified that during his several attempts to resuscitate Lewis, the jaw was clenched. This evidence indicated that Lewis had just suffered the cardiac arrest.

The issue is whether the trial court's exclusion of the hearsay evidence as not fitting the necessity exception is an abuse of discretion.[27] If the discretion is abused in that the law requires the evidence to be excluded or admitted and the trial judge rules the opposite, this constitutes clear error.[28] Evidence of even doubtful relevance should be admitted.[29]

The first part of the necessity rule is satisfied if the evidence is unattainable from some other source (e.g., only the unavailable declarant has it; it is unique to her), the declarant is unavailable (e.g., dead) and, as is true of all evidence, it is relevant.[30] If it contradicts other witnesses' testimony, as here, it is relevant.[31] Declarant Milner's statements meet these criteria.

The second part of the rule is that the evidence must be shown to be trustworthy, a threshold degree of trustworthiness to warrant admissibility although not to the ultimate degree to achieve credibility with the jury. Emory argues that Todd's and Tom Lewis' testimony may be biased, but they are subject to cross-examination. Any question regarding their interest in the case "should merely go to the credibility of the witness, not to the admissibility of the declarant's statement."[32]

As to the trustworthiness of the declarant's statement, "the mere fact that a witness is dead does not render his declarations admissible, although, if in addition to the death of a witness there are circumstances which attribute verity to his declarations, the hearsay rule may be relaxed to permit the admission of such declaration."[33]

---

[27] See *White v. White*, 262 Ga. 168, 169 (415 SE2d 467) (1992).

[28] See *Andrews v. State*, 249 Ga. 223, 227-228 (290 SE2d 71) (1982) (whether evidence is admissible involves "the discernment of the trial judge," whose determination will not be disturbed unless it is "clearly erroneous").

[29] *Ga. Power Co. v. Irvin*, 267 Ga. 760, 766 (3) (482 SE2d 362) (1997).

[30] See, e.g., *Hayes v. State*, 268 Ga. 809 (493 SE2d 169) (1997); *White v. State*, 268 Ga. 28 (486 SE2d 338) (1997); *Holland v. State*, 267 Ga. 833 (483 SE2d 584) (1997); *Higgs v. State*, 256 Ga. 606, 607-608 (2-5) (351 SE2d 448) (1987); *Smith v. State*, 231 Ga. App. 677 (499 SE2d 663) (1998); *McKibbons v. State*, 226 Ga. App. 452 (486 SE2d 679) (1997).

[31] Emory argues that the evidence is cumulative, but it would only be cumulative if it conformed to that of other witnesses.

[32] *Swain v. C & S Bank of Albany*, 258 Ga. 547, 550 (1) (372 SE2d 423) (1988).

[33] (Citations and punctuation omitted.) *Chrysler Motors Corp. v. Davis*, 226 Ga. 221, 224

"[T]he proponent need only show threshold trustworthiness. . . . If the statement was made in circumstances in which it is unlikely to have been untrue, it meets this aspect of trustworthiness. In other words, there must be something present which the law considers a substitute for the oath of the declarant and his cross-examination by the party against whom the hearsay is offered. . . . [T]he ultimate trustworthiness [is] left to the jury [where suitable]. It is for the jury, under appropriate instructions, to determine the weight and credibility of the declarations."[34] "[A] finding of trustworthiness must be based on a consideration of the totality of the circumstances, but . . . the relevant circumstances include only those that surround the making of the statement and that render the declarant worthy of belief. The standard is whether the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility."[35]

Milner was the only person who intubated Mr. Lewis and was in the best position to know how easy it was. She was a friend of Lewis but also an employee of the hospital, and the statements were against the interest of her employer. There is no evidence that her statements were self-serving or calculated to benefit Lewis. There has been no suggestion that she had a reason to lie. She made the statements to Todd, another respiratory therapist, in a professional capacity after he came on duty the morning after she had intubated Lewis. Todd's testimony indicates that the statement was made in the course of their professional work in intubation. She made essentially the same statement to Jim Lewis's twin brother, who was also a respiratory therapist, within a week or so of the episode. Thus there is consistency.

Todd testified that difficult intubations were typically discussed among therapists. He acknowledged that ease of intubation was a subjective conclusion and that his own conclusion might differ based on the same circumstances. There is no contradictory information in the related written medical records, and difficult intubations are generally recorded and should be noted on the hospital chart. The chart showed no such indication.

The fact that the statements contradict the other testimony does not eliminate their reliability. Emory contends such an inconsistency indicates a lack of trustworthiness. The cases cited in support are

---

(1) (173 SE2d 691) (1970), quoted with approval in *Swain*, supra, 258 Ga. 547.

[34] (Citations and punctuation omitted.) *C & S Bank of Albany v. Swain*, 185 Ga. App. 881, 884-885 (366 SE2d 191) (1988) (Beasley, J., dissenting), cited with approval by the Supreme Court in *Swain*, supra, 258 Ga. 547, 550 (2).

[35] (Citations and punctuation omitted.) *Fenimore v. State*, 218 Ga. App. 735, 737 (463 SE2d 55) (1995).

distinguishable.[36]

Because a threshold level of trustworthiness has been shown, Mrs. Lewis should be allowed to introduce the deceased declarant's statements to the jury, to counter the recollections of others on the scene and of Emory's experts with respect to their opinions concerning length of time between arrest and intubation and its significance.

3. Before the litigation, Emory's attorney sent a letter to counsel for Mrs. Lewis summarizing information about her husband's care and the hospital's attempts to save him. The letter stated further: "As we also discussed, this will confirm that this summary is being provided *only* for informational purposes, and should litigation ensue, it will *not* be used by either party for any purpose, whether as direct evidence, impeachment, for cross-examination, etc."[37] After suit was filed, Emory provided a copy of the letter to Dr. James Ornato, one of its experts, and he reviewed it as a part of his analysis of the case.

During trial, Dr. Ornato's deposition was read to the jury, but the court sustained an objection to the portion of the deposition where Lewis' attorney cross-examined Ornato about the letter. Lewis contends the court erred because Emory waived any right to rely on the agreement not to use the letter and a plaintiff is entitled to cross-examine an expert on the factual basis for his opinion.

The trial court did not state the basis of its ruling. "The right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against him."[38] And as the Supreme Court has written: "a party who relies upon a witness' opinion may not withhold from the jury the facts that are relied upon in forming the opinion, [cits]. Furthermore, a jury is entitled to know all of the facts upon which the witness' opinion rests and the facts may be brought out on cross-examination. [Cits.]"[39]

By giving the letter to its expert, Emory violated the agreement between the parties not to use it in the litigation. No valid ground is presented to show that it did not waive the agreement by so doing. Reliance on the report by Emory's expert requires allowing Lewis to cross-examine Ornato using the letter.[40] The deposition reveals that Emory's argument that Lewis attempted to use the letter in a prejudicial manner is without merit.

---

[36] See *Mallory v. State*, 261 Ga. 625 (409 SE2d 839) (1991) (other than there was no reason for the declarant to lie, there were no indicia of trustworthiness); *Boehm v. Abi-Sarkis*, 211 Ga. App. 181 (438 SE2d 410) (1990) (declarant gave inconsistent testimony about the critical facts).

[37] (Emphasis in original.)

[38] OCGA § 24-9-64.

[39] *Eason v. State*, 260 Ga. 445, 446 (396 SE2d 492) (1990); see also cases cited therein.

[40] *Jimmerson v. State*, 190 Ga. App. 759, 761 (1) (380 SE2d 65) (1989) (reversible error to withhold from the jury facts on which opinion relied upon is based).

4. Lewis contends the jury was unfairly prejudiced in favor of Emory because the trial court instructed the jury on five occasions that they could not guess or speculate to reach a conclusion in the case. In two of the instances the court was instructing the jury about the requirement that expert testimony must support a finding of professional negligence. In one other instance, the court was instructing that it could find for the defendant even if the cause of Lewis' death was a matter of speculation.

" 'It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error. . . .' "[41] In that context the repetition did not cause reversible error. Nevertheless, the court should not set impartiality at risk by emphasis on select parts of the instructions.[42]

*Judgment reversed. Pope, P. J., and Ruffin, J., concur specially.*

POPE, Presiding Judge, concurring specially.

I agree with Divisions 2, 3 and 4 of the opinion; I write separately with respect to Division 1.

I agree with the majority that because Lewis sought damages in excess of the primary coverage there was no reason to exclude St. Paul, as the excess carrier, from application of the rule from *Atlanta Coach Co. v. Cobb*, 178 Ga. 544 (174 SE 131) (1934). Accordingly, I agree that the court erred in failing to qualify the jury as to the officers, employees, stockholders and stockholder relatives of St. Paul Fire & Marine Insurance Company. And, I agree that the court's post-verdict inquiry to the jurors was incomplete and failed to substitute for voir dire.

I write separately with respect to the majority's suggestion that the requisite information should be gathered from jurors during voir dire without informing them that an insurance company is involved in the case. "[I]n this enlightened age, it can and should be presumed that prospective jurors already realize that liability insurance coverage is likely to be present in cases involving [medical malpractice claims]. [Cits.]" *Arp v. Payne*, 230 Ga. App. 840, 841 (497 SE2d 810) (1998) (Pope, P. J., concurring specially).

"I believe that the best approach would be to continue to qualify prospective jurors about any relationship they might have with any interested insurer, as is mandated by *Atlanta Coach Co. v. Cobb*, [supra]. After such qualification, however, to avoid any potential prejudice that might arise from the qualification itself, or the pro-

---

[41] *Roker v. State*, 262 Ga. 220, 222 (4) (416 SE2d 281) (1992).

[42] See *Jackson v. Rodriquez*, 173 Ga. App. 211 (325 SE2d 857) (1984) (" 'it is error to repeat again and again a portion of a charge which is more favorable to one party than the other,' " but the charge as a whole is determinative).

spective jurors' own common knowledge, I would recommend that the trial court give specific limiting instructions that the existence or lack of insurance in a given case is not material and is not to be considered in reaching a decision in the case." *Arp v. Payne*, 230 Ga. App. at 842 (Pope, P. J., concurring specially). See also *Dalton v. Vo*, 230 Ga. App. 413, 414 (497 SE2d 245) (1998) (Pope, P. J., concurring specially).

I am authorized to state that Judge Ruffin joins in this special concurrence.

DECIDED NOVEMBER 3, 1998 —
RECONSIDERATION DENIED DECEMBER 18, 1998 ▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

*William Q. Bird & Associates, William Q. Bird, Karin L. Allen, Dwyer, White & Sapp, J. Matthew Dwyer, Jr.*, for appellant.

*Long, Weinberg, Ansley & Wheeler, Frederick N. Sager, Jr., Anandhi S. Rajan, J. M. Hudgins IV, Johnathan T. Krawcheck*, for appellee.