A11A0284, A11A0285. HOOVER v. MAXUM INDEMNITY COMPANY; and vice versa.

(712 SE2d 661)

MILLER, Presiding Judge.

James Matthew Hoover filed the instant action against Maxum Indemnity Company, seeking to recover under an insurance policy issued by Maxum to its insured, Emergency Water Extraction Services, LLC ("EWES"). Hoover's complaint alleged that Maxum's policy provided coverage for the bodily injuries he sustained during an accident, and that Maxum breached its duties to defend EWES and to indemnify his claim for compensation. Maxum denied Hoover's allegations and filed a motion for summary judgment, contending that Hoover's claim was not covered under its policy since timely notice of the occurrence had not been given, and since a policy exclusion applied. Hoover filed a motion for partial summary judgment, contending that Maxum was liable for breach of the duty to defend as a matter of law. The trial court granted the motions filed by both parties, finding that Maxum had breached a duty to defend EWES against the underlying claim, but did not breach a duty to indemnify since there was noncompliance with the policy's notice requirements. These cross-appeals ensued.

We conclude that the evidence established an unreasonable failure to give timely notice as required by the policy, and therefore, Maxum was not obligated to provide either a defense or coverage. Accordingly, in Case No. A11A0284, we affirm the trial court's decision granting summary judgment in favor of Maxum. In Case No. A11A0285, however, we reverse the trial court's decision granting partial summary judgment to Hoover as to the duty to defend claim.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant.

(Citation omitted.) *Kay-Lex Co. v. Essex Ins. Co.*, 286 Ga. App. 484, 485 (649 SE2d 602) (2007).

So viewed, the record evidence shows that Hoover was employed as a water technician with EWES. On October 20, 2004, Hoover's supervisor asked him to deliver an extension ladder to the residence of a EWES customer. The residence was undergoing roof repairs by a contractor who was not affiliated with EWES. After Hoover delivered the ladder to the residence, the contractor asked Hoover to climb onto the roof and assist with the roof repairs. Hoover agreed and climbed up the ladder to the roof.

Hoover later descended from the roof, using a different ladder that had been placed against the residence. Upon his descent, the ladder collapsed and Hoover fell approximately 25 to 30 feet to the ground. Hoover struck the back of his head and neck, causing him to sustain a catastrophic brain stem injury. Hoover was transported to the hospital for treatment of his life-threatening injuries.

The co-owner of EWES, Jeff Owen, was made aware of the accident on the same day that it occurred. Owen went to the hospital and spoke to Hoover's father.[1] Owen testified that at that time, Hoover's father requested EWES's insurance information and stated that he intended to contact the insurer for verification of the policy and coverage. Approximately one week later, Owen had another conversation with Hoover's father, who allegedly stated that he had "put in a call to somebody and was waiting to hear back[.]" Owen claimed that he believed that Hoover's father had contacted Maxum since he had obtained the policy information from EWES and was familiar with the amount of coverage under the policy.

On October 18, 2005, Hoover filed a workers' compensation action against EWES. The workers' compensation action was subsequently dismissed since EWES was not subject to the Workers' Compensation Act.

Thereafter, on September 22, 2006, Hoover filed a tort action against EWES, alleging that it was liable for the negligence of its supervisor under the doctrine of respondeat superior. By a letter dated October 18, 2006, EWES's counsel forwarded the complaint from the underlying tort action to Maxum, indicating that the complaint had been served on or about September 25, 2006, that counsel was familiar with the claim, and that a determination was needed as to whether counsel's law firm should continue defending the claim on behalf of EWES and Maxum.

---

[1] Owen testified that Hoover's father was an insurance agent for a different insurer, State Farm Insurance Company. Hoover's father later died and did not testify in any of the underlying proceedings.

On October 23, 2006, Maxum responded that the October 18 letter was the first notice that it had received of the occurrence. Maxum's letter went on to state that coverage did not exist for the occurrence under its policy since Hoover's supervisor was not defined as an insured and since the policy contained an "Employer's Liability" exclusion, which expressly provided that the insurance did not apply to bodily injury of an employee of EWES arising out of and in the course of employment by EWES or performing duties related to the conduct of EWES's business. In addition, Maxum's letter stated that "[c]overage for this matter may be barred or limited to the extent the insured has not complied with the notice provisions under the policy." The letter further specified as follows:

> Maxum's specific enumeration of the above policy defenses is not intended as a waiver of any other policy defenses that Maxum may now have or that may arise from facts discovered in the future[,] nor should Maxum be estopped from raising additional coverage defenses. Maxum also continues to reserve the right to raise any other coverage defenses, including the right to disclaim coverage on any other basis that may become apparent as this matter progresses and as Maxum obtains additional information.

Maxum did not provide a defense for EWES in the underlying tort action. EWES instead retained and was represented by its own defense counsel. Hoover filed a third-party complaint against Maxum for indemnification in the underlying tort action, but the third-party complaint was subsequently dismissed. Following a bench trial, a judgment in the amount of $16,456,501.60 was entered in favor of Hoover against EWES. Thereafter, EWES assigned its right of action against Maxum to Hoover, pursuant to a post-judgment assignment of action.

Hoover then commenced the instant lawsuit against Maxum, asserting claims for breaches of the duties to provide a defense and indemnification under the policy. The trial court resolved the lawsuit by granting both parties' cross-motions for summary judgment.

### Case No. A11A0284

1. (a) Hoover contends that the trial court erred in granting Maxum's motion for summary judgment since a jury question existed as to whether Maxum received timely notice of the occurrence in accordance with the policy's terms. We disagree.

"Insurance is a matter of contract and the parties are bound by the terms of the policy. It is also the general rule that the insured is

chargeable with knowledge of all the conditions imposed upon him by the terms of his policy." (Citations and punctuation omitted.) *Richmond v. Ga. Farm &c. Ins. Co.*, 140 Ga. App. 215, 221 (3) (231 SE2d 245) (1976). Notice provisions in an insurance policy are valid and must be complied with, absent a showing of justification. Id. at 222 (3). Significantly,

> [t]he purpose of the notice provision in an insurance policy is to enable an insurer to investigate promptly the facts surrounding the occurrence while they are still fresh and the witnesses are still available, to prepare for a defense of the action, and, in a proper case, to determine the feasibility of settlement of the claim.

(Citations omitted.) Id. at 221-222 (3). When timely notice of an occurrence is not given, the insurer is deprived of the opportunity to perform a prompt investigation and to preserve essential evidence. Id.; see also *Bituminous Cas. Corp. v. J. B. Forrest & Sons*, 132 Ga. App. 714, 716-717 (1) (209 SE2d 6) (1974). Consequently,

> [w]here an insured has not demonstrated justification for failure to give notice according to the terms of the policy, and where the insurer has not waived compliance with the terms or any objections to the insured's failure, then the insurer is not obligated to provide either a defense or coverage.

(Citations omitted.) *Richmond*, supra, 140 Ga. App. at 222 (3).

Here, the pertinent notice provisions of Maxum's policy stated as follows:

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

. . .

2. Duties in the Event of Occurrence, Offense, Claim or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.[2]

The undisputed evidence showed that on the date of the occurrence, EWES's co-owner was aware of the occurrence and the life-threatening injuries that Hoover had sustained. He also was aware that a claim against EWES was expected to be filed on Hoover's behalf. Moreover, he knew that EWES had an insurance policy with Maxum that may have provided coverage. It is further undisputed that EWES's co-owner did not notify Maxum of the occurrence at that time. There also was no evidence indicating that Maxum was notified by any other EWES representative or co-owner.

Hoover nevertheless contends that Maxum received timely notice of the occurrence through his father. In this regard, Hoover relies upon EWES's co-owner's testimony that approximately one week after the occurrence, Hoover's father told him that he had "put in a call to somebody and was waiting to hear back" from Maxum. Contrary to Hoover's contention, however, the alleged statement did not reflect that his father had given the required notice to Maxum.[3] There was no evidence establishing that the "somebody" who his father allegedly contacted was an authorized agent of Maxum. See *Kay-Lex Co.*, supra, 286 Ga. App. at 489 (1) (a) (finding that notice to an independent insurance agent was insufficient to establish notice to the insurer). Moreover, the evidence failed to set forth the

---

[2] Subsection b of the policy's notice provisions further provided that "[i]f a claim is made or suit is brought against any insured, . . . [the insured] must see to it that [Maxum] receive *written* notice of the claim or suit as soon as practicable" and "[i]mmediately send [Maxum] copies of any demands, notices, summonses or legal papers received in connection with the claim or suit[.]" (Emphasis supplied.) In its order granting Maxum's motion for summary judgment, the trial court erroneously determined that the policy's provisions required written notice of the "occurrence." Contrary to the trial court's determination, the policy's notice provisions did not require written notice of an "occurrence"; rather, written notice was required only if a "claim" or "suit" was filed. Nevertheless, "a grant of summary judgment is to be affirmed if it is right for any reason[.]" (Footnote omitted.) *Abellera v. Williamson*, 274 Ga. 324, 326 (2) (553 SE2d 806) (2001).

[3] To the extent that the statement was considered for the limited purpose to prove that Maxum had notice of the occurrence, it did not constitute inadmissible hearsay. See *Encompass Ins. Co. of America v. Friedman*, 299 Ga. App. 429, n. 1 (682 SE2d 694) (2009); *Quiktrip Corp. v. Childs*, 220 Ga. App. 463, 466 (3) (469 SE2d 763) (1996). Moreover, an exception to the hearsay rule will be allowed from necessity "where necessity and particularized guarantees of trustworthiness are established." (Punctuation and footnote omitted.) *Lewis v. Emory Univ.*, 235 Ga. App. 811, 816 (2) (509 SE2d 635) (1998). See also OCGA § 24-3-1 (b). Here, the declarant, Hoover's father, was deceased. "[T]he mere fact that a witness is dead does not render his declarations admissible, although, if in addition to the death of a witness there are circumstances which attribute verity to his declarations, the hearsay rule may be relaxed to permit the admission of such declaration." (Punctuation and footnote omitted.) *Lewis*, supra, 235 Ga. App. at 817-818 (2).

contents or substance of his father's statements during the alleged call, and thus, did not show that his father had provided notice of the occurrence. And testimony that Hoover's father was familiar with the amount of coverage under the policy did not otherwise indicate that Maxum had been notified.

Maxum contends that it did not receive notice of the occurrence until October 18, 2006, when EWES's counsel forwarded to it the complaint that had been filed in the underlying tort action. Under the circumstances presented, the two-year delay in notifying Maxum of the occurrence was unjustified and unreasonable as a matter of law. See *Kay-Lex Co.*, supra, 286 Ga. App. at 488-490 (1) (a) (concluding that unjustified 12-month delay in notifying the insurer of the accident was unreasonable as a matter of law); *Richmond*, supra, 140 Ga. App. at 221 (2) (concluding that unjustified eight-month delay in notifying the insurer of the accident was unreasonable as a matter of law).[4]

> Generally, whether an insured's notice to an insurer is "as soon as practicable" is a question of fact for a jury. Under all of the facts and circumstances of a particular case it may be found that an insured's delay in giving notice of an accident to his insurer was unjustified and unreasonable. In such event, on a motion for summary judgment, the court may rule on the question as a matter of law.

(Citations and punctuation omitted.) *Caldwell v. State Farm &c. Ins. Co.*, 192 Ga. App. 419, 420-421 (2) (385 SE2d 97) (1989). Because all of the facts and circumstances established that the two-year delay in giving notice to Maxum was unjustified and unreasonable, the trial court's decision granting summary judgment to Maxum was proper. See *Richmond*, supra, 140 Ga. App. at 221 (2).

(b) Hoover further contends that Maxum waived its policy defense regarding notice by failing to assert it as a ground for the denial of coverage in its October 23 letter. Hoover's contention is without merit.

It is true that "an insurer may waive any provision in an

---

[4] Compare *Southern Guaranty Ins. Co. v. Miller*, 183 Ga. App. 261, 263 (358 SE2d 611) (1987) (concluding that a 14-month delay in giving notice to the insurer was not unreasonable as a matter of law since the incident could be deemed as so trivial and inconsequential that the insured was not aware that it would give rise to a claim); *State Farm &c. Ins. Co. v. Sloan*, 150 Ga. App. 464, 467-468 (4) (258 SE2d 146) (1979) (concluding that the approximate six-month delay in giving notice to the insurer was not unreasonable as a matter of law since the insured was unaware that coverage for the accident existed under the policy). Here, however, EWES's co-owner was aware that Hoover had sustained life-threatening injuries as a result of the occurrence, that there could be coverage under the Maxum policy, and that a claim was likely to be filed.

insurance policy inserted for its benefit, and may waive any condition or limitation in the policy upon which it could otherwise rely." (Citations and punctuation omitted.) *Sargent v. Allstate Ins. Co.*, 165 Ga. App. 863, 865 (1) (303 SE2d 43) (1983). To establish a waiver, the evidence must show that after receiving notice of the occurrence, the insurer otherwise expressly or impliedly took a position indicative of its intent not to enforce satisfaction of the timely notice requirement. See *Brazil v. Govt. Employees Ins. Co.*, 199 Ga. App. 343, 344 (1) (404 SE2d 807) (1991). No such evidence exists in this case.

The October 23 letter that Maxum issued upon being notified of the claim pertinently stated that "[c]overage for this matter may be barred or limited to the extent the insured has not complied with the notice provisions under the policy." Maxum further added that its enumeration of the referenced policy defenses "[was] not intended as a waiver of any other policy defenses that Maxum may now have or that may arise from facts discovered in the future" and that it was "reserv[ing] the right to raise any other coverage defenses . . . that may become apparent as this matter progresses and as Maxum obtain[ed] additional information." Moreover, Maxum raised the notice defense in its answer to Hoover's third party complaint in the underlying tort action. The notice defense was also raised in Maxum's answer in the instant action. This evidence establishes that Maxum did not expressly or impliedly waive the notice defense. See *Kay-Lex Co.*, supra, 286 Ga. App. at 491 (1) (b); *Brazil*, supra, 199 Ga. App. at 344 (1).[5]

## Case No. A11A0285

2. In its cross-appeal, Maxum challenges the trial court's decision granting Hoover's motion for partial summary judgment. Maxum contends that the trial court erred in finding that it had breached its duty to provide a defense in the underlying tort action. We agree.

As explained in Division 1 (a) above, the evidence established an unjustifiable and unreasonable failure to comply with the notice provisions of Maxum's policy. As a result, Maxum was not obligated to provide either a defense or coverage. See *Kay-Lex Co.*, supra, 286 Ga. App. at 488 (1) (a); *Richmond*, supra, 140 Ga. App. at 221 (3). "If

---

[5] Hoover incorrectly relies on the case *Browder v. Aetna Life Ins. Co.*, 126 Ga. App. 140, 144 (2) (190 SE2d 110) (1972), which has been disapproved on other grounds by *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 29 (1) (343 SE2d 680) (1986). In *Browder*, the requirement for timely notice was waived since the insurer had expressly stated that the untimely notice "would not have much bearing on [the] case." Id. at 143-144 (2). *Browder*, however, is clearly distinguishable from the instant case since Maxum raised the notice defense and further disclaimed any waiver of the defense.

the insured elects to rest on his own conclusion of non-liability and do nothing about the giving of notice, he violates his contractual obligation and waives his right to have the insurer defend against a claim that may be made at some later time." *Bituminous Cas. Corp.*, supra, 132 Ga. App. at 717-718 (1). Since timely notice of the occurrence was not provided as required by the policy, Maxum's failure to undertake a defense in the underlying tort action was legally justified and no breach of duty occurred. Id. (ruling that an insurer will not be bound to defend the insured if there has been unjustifiable noncompliance with the notice provisions of the insurance policy).

*Judgment affirmed in Case No. A11A0284. Judgment reversed in Case No. A11A0285. Ellington, C. J., and Doyle, J., concur.*

DECIDED JUNE 24, 2011 — 

*Lance A. Cooper*, for appellant.
*Freeman, Mathis & Gary, Philip W. Savrin, Darl H. Champion, Jr.*, for appellee.